## Gloss et al. *versus* Black.

1. Where goods of a stranger to an execution are seized and held under it, they are in the custody of the law, and while so held the owner cannot take possession nor maintain replevin.

2. The law does not attribute constructive possession to the owner of property which it has in its own control by means of an officer. A mere purchaser at a sale by the officer, who receives from him immediate possession, is not responsible in trespass. His purchase does not of itself make him a participant in the wrongful seizure, and he is not made a trespasser by relation.

October 23d 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., absent.

Error to the Court of Common Pleas of *Clarion county:* Of October and November Term 1879, No. 122.

Trespass *vi et armis*, *de bonis asportatis*, by Jacob Black, against Philip Gloss, Joseph Hoofnagle, John H. Walker and John Young.

The facts were these:

On the 10th of May 1877, R. J. Dahle obtained a judgment, before Justice Adam Black, against R. M. Shaw, and soon after issued an execution to John Young, a constable, who, by virtue thereof, regularly levied upon and sold, as the property of Shaw, certain rig timbers, about thirty-two pieces, to Philip Gloss, for $40. Gloss immediately gave the property in charge of a man he had hired to watch it, and the same day, or the next, began to have

it hauled to his home, which he accomplished within a few days. No notice of any adverse claim was given at the constable's sale, nor did Gloss have any knowledge of any such claim till after he had hauled a considerable part of his purchase away. Hoofnagle and Walker were Gloss's hands who did the hauling; John Young was the constable who sold the property. After he had delivered the timber to Gloss he had nothing to do with it. On part of Black, the plaintiff, it was claimed that he had bought the timber of Rockwell and McCool on the 16th of April 1877, who, he claimed, had owned it. On part of defendant it was alleged the property had been cut off Shaw's land, taken out and hauled by himself and Peters, Rockwell and McCool, as his employees, and that the property belonged to Shaw at the time of the levy. At the time of the levy and sale of the timber by the constable, it was lying at the side of the public road where it had been dropped as it had been hauled out of the woods—the public road at that place running over lands of Black, the plaintiff. The constable's sale of the timber was made at the place where it was lying, the constable standing on the timber at the time, and immediately after the sale he delivered possession to Gloss, the purchaser, and gave him a bill of sale and receipt for the money.

At the trial the court, Jenks, P. J., charged the jury, inter alia, as follows:

"It will be remembered that there was no change in the possession of the property—by no change I mean no manual taking hold of the property and removing it—by the constable from the place where he found it; nor is there any evidence to show that the constable, when he sold it, manually delivered it into the possession of Gloss, by changing it from the possession of the land in whose possession he found it, save the change was to simply turn it over to him and simply mark his name. Under these facts, it is said there can be no recovery against Gloss and his hands. Plaintiff replies that there can be a recovery against all, for the reason set forth in his points as follows:

"First. The issuing of an attachment, under the Act of 1874, without a bond being filed by the plaintiff, as required by the act, was without authority, and proceedings under it were void, and Young, and all persons aiding or assisting in the seizure and removal of the plaintiff's property, were trespassers, and liable in this suit: Paxton v. Steckel, 2 Barr 93.

"We decline to answer this point as requested.

"Second. There is no evidence of what the execution was, not even its contents, nor what the advertisement contained, nor is it in evidence that the constable had an execution issued by the justice at all. It may have been, for all that appears, a blank piece of paper; and a sale made under such circumstances would be no defence to the constable, and all participating in the taking

[Gloss *v.* Black.]

and carrying away of the property of the plaintiff would be trespassers.

" We answer that, in the absence of the execution, and the uncertain character of the testimony, we confess our inability to exactly declare the rights of the parties under it.   If there was an execution, and the constable levied upon and sold the property under it to Gloss, and Gloss did no more than purchase the property, he would not be a trespasser.   It would be different with the constable if he seized the property under an execution on a judgment obtained against another.   For further answer we refer to the answer to defendant's point.

" Third.   There is no proceeding on the justice's docket authorizing him to enter a judgment against defendant, and the judgment entered by him, and the execution issued thereon, are nullities, and would not justify the constable in attaching the property, or the other defendants in removing it, and all are trespassers.

" We decline to answer this as requested, and for further answer refer to answer to defendant's point.

" You will see there is a difference between the parties. · As to the constable, if he levied on the property of Jacob Black, he is responsible, and as to him, we instruct you, that if it was Black's property the execution would be no justification, and as to him we would have to give a verdict in favor of the plaintiff for the full value of the property ; so we leave him out.   Then is Gloss, as well as the others responsible ?   The defendant says not ; they say :

" First.   That if the defendant, Gloss, purchased the timbers in dispute at constable's sale on an execution under a regular levy and sale, and the constable delivered him possession thereof in pursuance of such sale, their verdict should be, as to Philip Gloss, Joseph Hoofnagle and John H. Walker, for defendants.

" They do not pretend that the verdict should not be against the constable, but say it should be against the constable alone—in favor of Jacob Black for the lumber proved against the constable—that it should not include the others.   As to that point we answer as follows :

" If the property belonged to the plaintiff, and the constable had removed it and delivered it, off the premises to Gloss, the constable alone would be responsible as a trespasser : but if he levied on it while on the plaintiff's premises, permitted it to remain there, sold it there, and the lumber remained there unremoved, and there was no other delivery than the simple turning of it over to the defendant, and Gloss, and he and the other defendants afterwards entered and, against the consent of the plaintiff, took it away, they would all be responsible for such amount of timber as was lying upon the plaintiff's premises.

" We say there seems to be but little controversy that as to the

[Gloss *v.* Black.]

constable there could be a recovery for the value of the timber. As to the others, there should be a recovery against them also, for so much timber as was found on the plaintiff's premises, if the following facts be found by the jury: That the property belonged to Jacob Black. If the property belonged to the plaintiff, and the constable had removed it, and delivered it off the premises to Gloss, the constable alone would be liable as a trespasser; but if he levied on it while on the plaintiff's premises, permitted it to remain there, sold it there, and the lumber remained unremoved, and no other delivery than a simple turning of it over to the defendant, Gloss, and he and the other defendants afterwards entered, against the consent of Black and took it away, all would be responsible for the value of the timber thus interfered with on his premises."

Verdict for plaintiff against all the defendants for the value of the timber and interest, when the latter took this writ and alleged that the court erred in the answer to defendant's first point, and in the portions of the above charge.

*Wilson & Jenks,* for plaintiff in error.—Trespass can only be maintained when the plaintiff has the actual or legal possession of the property. When the constable made the levy the plaintiff's constructive possession was gone, and that without an actual manual possession by the constable: Paxton *v.* Steckel, 2 Barr 93.

The possession and charge of the watchman, put there by Gloss, was a continuance of the possession the constable gave him when on the timber. A purchaser at a sheriff's or constable's sale, who participates in the transaction only by purchasing the goods, is liable to the owner in replevin, but not in trespass: Ward et al. *v.* Taylor, 1 Barr 238.

An owner whose property is wrongfully seized and sold by the sheriff cannot maintain trespass against the purchaser for taking the property away; Hammon *v.* Fisher, 2 Grant 330; Talmadge *v.* Scudder, 2 Wright 518.

*James Campbell,* for defendant in error.

Mr. Justice TRUNKEY delivered the opinion of the court, November 17th 1879.

To maintain this action it is absolutely necessary that the plaintiff, at the time of the trespass, had the actual possession or the right of taking it. Where goods of a stranger to an execution, are seized and held under it, they are in the custody of the law, and while so held the owner cannot take possession, nor maintain replevin. The law does not attribute constructive possession to the owner of property which it has in its own control by means of an officer. A mere purchaser at a sale by the officer, who receives from him immediate possession, is not responsible in trespass. His

[Gloss *v.* Black.]

purchase does not of itself make him a participant in the wrongful seizure, and he is not made a trespasser by relation : Hammon *v.* Fisher, 2 Grant 330 ; Ward *v.* Taylor, 1 Barr 238 ; Talmadge *v.* Scudder, 2 Wright 517. Young, the constable, seized and sold the timber. After such turning over and delivery as he immediately made to the purchaser, he did nothing. He had no interest in the timber and was not liable on an implied warranty of title. Before the sale, Gloss and his employees had in nowise participated in the acts of the constable. There is no evidence that Young and the other defendants acted in concert at any time. Can it be pretended that a public sale of goods in custody of the law, by its officer, without more, makes the officer and the purchaser joint trespassers ? Were this so then in all cases where the officer had committed a trespass in the seizure, the purchaser would be jointly responsible; but it is settled, as we have seen, that he is not. " Separate acts of trespass where there is no concert will not authorize a joint recovery, although the injury be common and produced in·part by each of the acts complained of :" Bard *v.* Yohn, 2 Casey 482.

We think the defendants' point should have been affirmed, for there was some evidence of the facts therein assumed. The timber was alongside the public road and on the plaintiff's land. Gloss testified that the constable delivered it into his possession at the time of sale ; that he hired a man to watch it, soon as bought ; that he commenced hauling it the same or the next day, and had it nearly all away before he knew Black claimed it, and then Black permitted him to haul the rest. If this be the whole truth he was not a trespasser. Bidders at a sheriff's or constable's sale, made on the land of the owner of the goods, are not trespassers. Nor are buyers who take away their purchases as they leave. Nor is the purchaser of timber, situate as this was in reference to a public road, who, without violence, continuously holds possession for the necessary time for bringing teams to haul it away. But in another view of the facts, which the jury might well have found and to which their attention was directed in the charge, Gloss and his employees were trespassers. What the learned judge said, in answer to the point, was entirely fitting to this view, applied to all the defendants except Young, and just what ought to have been said, even if he had granted the instruction prayed for.

There was no error in the charge as to the matter referred to in the second assignment.

The question respecting the proof of the execution, urged in argument by defendant in error, is not before us.

Judgment reversed, and *venire facias de novo* awarded.