## HOXSIE et al. v. NODINE.

### (Circuit Court of Appeals, Ninth Circuit.   May 29, 1903.)

### No. 859.

1. CONVERSION—JOINT LIABILITY.

A defendant who purchased property which had been seized from plaintiff and was sold under a writ claimed to have been void, but who took no part in the removal of the property, cannot be held jointly liable with the officer for the trespass and conversion, the rule being that to create a joint liability there must have been a concert of action between the defendants.

2. SAME—ACTIONS—QUESTIONS FOR JURY.

In a joint action for trespass and conversion, where there is a conflict of testimony, the question whether there was such concert of action between the defendants as to establish a joint liability is one for the jury, and instructions which take such question from the jury, or which leave them to infer that malice, oppression, or gross negligence on the part of any one defendant renders them all liable for exemplary damages, are erroneous.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

This was an action brought in the District Court of the United States for the District of Alaska, Second Division, by Jennie M. Nodine against Charles E. Hoxsie, William M. Eddy, and J. C. Muther. The complaint states three causes of action in trespass and conversion. In the first cause of action the defendants are charged with trespass in entering upon certain premises occupied and in the possession of the plaintiff, in Nome, Alaska; the seizure and imprisonment of the plaintiff; the tearing down and destruction of plaintiff's lodging house; and the destruction of plaintiff's business as a lodging house keeper. For this cause of action the plaintiff claims damages in the sum of $10,000. In the second cause of action the defendants are charged with the removal from plaintiff's lodging house and premises of all of her personal property, consisting of beds, bedding, clothing, bunks, stoves, wearing apparel, cooking utensils, groceries, and provisions, throwing the same into the public highway of Nome, and leaving the same in such public highway. It is alleged that a large quantity of this property became lost and damaged, to the damage of the plaintiff in the sum of $2,500. In the third cause of action it is charged that the defendants have deprived plaintiff of the means of carrying on her business of keeping lodgers and making a livelihood, and that she was dispossessed of her lot, which was taken possession of by the defendant Hoxsie, to her damage in the sum of $15,000. Upon these three causes of action the plaintiff prayed for judgment in the sum of $27,500.

The defendants Hoxsie and Eddy answered, denying the allegations of plaintiff's complaint. Hoxsie, further answering, set up his prior possessory right to the premises described; the entry of the plaintiff upon the premises without his consent, and her refusal to vacate; the subsequent organization in 1899 of a consent government for the town of Anvil City (afterwards changed to Nome), under a charter adopted by a unanimous popular vote; and the election of officers, including a municipal judge, as provided for by the charter, with power to act as an arbitrator and municipal judge, to hold court and entertain complaints, and hear and determine controversies concerning the rights of possession of property known as town property and lots. It was further alleged by the defendant Hoxsie, in defense of the action, that he filed his complaint with the municipal judge, complaining of the plaintiff Nodine, and submitted to the said municipal judge his complaint against said Nodine for trespass upon said lot, and asked to have the matter arbitrated, adjusted, and decided; that the plaintiff consented to said arbi-

¶ 1: See Execution, vol. 21, Cent. Dig. § 1393.

tration, and submitted her claims to the said property to the said municipal judge and arbitrator, and thereupon the said defendant and plaintiff presented: to said arbitrator and municipal judge the evidence of witnesses concerning the rights of possession to the said property; that the said municipal judge, acting as arbitrator, found and decided that the defendant Hoxsie was entitled to the possession of said premises, and that the plaintiff Nodine was a trespasser, and should vacate said tract of land. It was further alleged, with respect to the defendant Eddy, that the citizens had authorized him to act as the agent and officer of said municipal court, and to execute and enforce the findings and judgments of said court and of said arbitrator; that said municipal judge, acting under the power conferred upon him, delivered to the said Eddy his findings in said matter of arbitration, and informed and directed the said Eddy to eject the said plaintiff from the premises; that in pursuance of said order the plaintiff was ejected from the possession of said premises, and not otherwise; that in the execution of said order of the municipal court the defendant Eddy used no more force than was necessary for the performance of his duties therein in the execution of said order, and committed no violence against either the person or property of said plaintiff, and did not arrest or restrain said plaintiff of her liberty or imprison her at any time.

The defendant Muther filed a separate answer, in which he also set up the proceedings and the organization of the consent government of the city of Anvil, afterwards Nome, the adoption of a charter, the election of officers, and the proceedings of the municipal court, as alleged in the separate answer of his codefendants Hoxsie and Eddy. The defendant Muther further alleged that the order of the municipal court to eject the plaintiff from the premises required the defendant Eddy to levy upon the goods and chattels of the plaintiff, Nodine, and make the costs which had been taxed against her in the judgment; and that under and in pursuance of said order, and not otherwise, said plaintiff was ejected from the premises, and that the said Eddy, acting under said writ, and not otherwise, levied upon and seized one large tent and lumber foundation; that pursuant to such order and a notice of sale the said tent and lumber foundation were sold at public auction by the defendant Eddy to the said Muther for the sum of $197.50, the said Muther being the highest bidder therefor; that thereafter the said defendant Muther unconditionally offered to restore to the said plaintiff the said tent and lumber foundation, being all the property said defendant received from the said Eddy as aforesaid; that the defendant Muther has always been ready and willing to return the said tent and lumber foundation to the plaintiff, but that the plaintiff has refused and still refuses to receive possession thereof, or to accept the return thereof.

Upon the issues thus presented, the case was tried before the court and a jury. The plaintiff testified in her own behalf with respect to all the acts alleged in her complaint implicating the defendants Hoxsie and Eddy, but did not connect the defendant Muther with the trespass, imprisonment, or the removal or destruction of the property or business, or with any of the matters or things complained of. The only testimony in support of the complaint relating to the defendant Muther in this connection was that of the witnesses Baker and Spiers, who testified in behalf of the plaintiff. Baker was asked this question: "Do you know who tore this building down?" His answer was: "I believe that Mr. Muther was the instigator. He had men—hired men—don't know their names. Muther was the man who bought the building, and through his instrumentality it was torn down. I saw Muther there at the time it was being torn down, giving orders. I heard him giving orders. I don't know what was done with the tent and the material it was made of. Muther was there on the ground. I saw him [Muther] do so." The witness Spiers testified that he was a carpenter, contractor, and builder, and on the 28th day of February, 1900—the 28th or 29th—he was working for Mr. Muther. He said: "In the morning I was working at Mr. Muther's. Later on I went up and took down this tent of Mrs. Nodine's; that is the day it was taken down and carried away."

Upon the conclusion of plaintiff's testimony the defendant Muther, by his counsel, moved the court to direct the jury to find a verdict in favor of the

defendant J. C. Muther, upon the grounds: (1) That there is no evidence to sustain the allegations of the complaint against the defendant Muther; (2) that there is a total and fatal variance between the allegations of the complaint and the proof submitted; (3) that this is a joint action against the defendants for an alleged joint conversion or tort, and that the evidence is wholly insufficient to show a joint liability or joint conversion or tort on the part of the defendants; (4) that there is no evidence whatever that the defendant Hoxsie took any part in, or participated in, the alleged conversion or tort; (5) that the evidence is wholly insufficient to show that the defendant Muther took any part in the alleged destruction of the property of the plaintiff, or the alleged conversion of the same; (6) that the evidence shows that if any of the said property was converted or destroyed by any one it was by the defendant William M. Eddy, and without the knowledge, consent, or direction of either of the other defendants. The defendant Muther, by his attorney, also moved the court, upon the same grounds, for a nonsuit, and for a dismissal of the action as to the defendant Muther. These motions the court denied, and the defendant excepted.

In defense of the action the defendants called Alonzo Rawson, who testified that during the fall of 1899 and the spring of 1900 he occupied the position of municipal judge under the municipality then existing at Anvil City (Nome), and also United States commissioner. The witness identified the pleadings and court file in the case of Hoxsie against Nodine, pending and tried in the municipal court over which he presided. The defendants then offered the record in evidence, consisting of the complaint and answer, the summons in the case, the evidence and notice of motion, the reply, the venire for a jury, the verdict of the jury, the writ of restitution, and notice of sale. The plaintiff objected, and the papers were offered in mitigation of damages. The plaintiff again objected, and the court overruled the objection, holding that the papers were admissible in evidence for the sole purpose of reducing damages or rebutting the evidence or inference of the commission of gross negligence, oppression, or malice on the part of the defendants. The defendants excepted to the ruling of the court restricting the evidence of the papers and the use thereof for the purpose named. The witness Rawson further testified, in substance, that the municipal court was organized and established in the latter part of the month of September, 1899. At that time there was at what was then called Anvil City a population of approximately 7,000 people. There was no machinery whatever established by Congress for the civil government of the municipality. A mass meeting was called, and a committee appointed to prepare a charter. At a second meeting the charter was adopted. After the adoption of the charter an election of officers was held by the citizens. The witness was a candidate for the office of municipal judge. There were other candidates. The witness secured about 1,100 votes. It was a general public election. Everybody participated who desired. At that election a city council was elected and a chief of police. William M. Eddy, one of the defendants, was elected chief of police. After the election and the organization of the officers, the witness presided over and conducted what was known as the "municipal court" from that time until the time of the disbanding of the municipality. The witness further testified that he knew the circumstances attending the execution of the writ of restitution in evidence. Mr. Hoxsie never had anything to do with the direct service or levy of this writ of execution. Mr. Eddy, acting as chief of police, and acting under the express orders of the witness, officially served it by placing Mr. Hoxsie in possession of the property described in the writ of restitution, by removing Mrs. Nodine from the property, and subsequently selling the tent for the costs of suit. The tent was actually taken down under Mr. Eddy's supervision, and it was taken down under the particular and express orders of the witness. Mr. Hoxsie and Mr. Muther did not in any way participate in tearing down that tent.

It does not appear from the record before this court that the defendants Hoxsie or Eddy were called as witnesses in the case, nor is the absence of their testimony explained. The defendant Muther was a witness for the defendants, and in his testimony said: "I had nothing at all to do with the tearing down or the removal of that building, and nothing at all to do with

it except to buy it at public auction and pay for it after it was delivered at my place of business. I refused to pay for it or have anything to do with it until it was delivered to me at my place of business." He testified, further, that before the tent was removed he went to the lawyers for the plaintiff and offered to return the tent to her. They would not accept it, and he testified that neither the plaintiff nor any one acting for her ever at any time made any demand whatever upon him for the return of the tent and foundation purchased by him.

The witness Spiers, who testified for the plaintiff that he was a carpenter, contractor, and builder, and on the 28th day of February was working for Mr. Muther, and later on in the day took down the tent of Mrs. Nodine, testified, on behalf of the defendant: "I participated at the tearing down of that tent under the direction of Mr. Eddy. Neither Mr. Hoxsie or Mr. Muther were present, and I didn't see either one of them working around there anywhere, or doing anything." And, referring to his previous testimony, he said: "I testified that Mr. Muther directed me to go down there and take that tent down. Mr. Eddy directed me. Mr. Muther didn't know any more about it than I did, excepting that he let me go down. Mr. Eddy came after me to go down there and do that work when I was working on Mr. Muther's building, and Mr. Muther allowed me to go with him. The truth about the matter as to how I came to go down there is that Eddy said, 'Why, he didn't know a great deal about building, and he had a great deal to do that day, and didn't intend to pay much attention to taking that tent down, and that the tent had to be taken down.' Muther wanted it taken down in good shape, and he was very willing to let him have some one to take it down right, so as not to have it all torn to pieces; and he said: 'Why, I will let you have two men that can go down there. If they can do anything for you, you may have them.' And Eddy told him that he wanted the men, and he told him that he wanted me to go down there to take that tent down. Mr. Muther was there at the time." He further testified that Mr. Eddy paid him for taking the tent down.

Alexander Smith, a witness for the defendants, testified that he was a carpenter; that he helped to take down the plaintiff's tent; that a man by the name of Spiers helped to take it down. He testified, further, that he was working under the direction of Mr. Eddy at the time.

It appears from the evidence, and was uncontradicted, that Muther was the highest bidder at the sale of the tent property under the so-called execution sale, and that he paid for it the sum of $197.50.

The court instructed the jury, with respect to the proceedings in which the property was sold, "that the writ issued out of that so-called court was void and without authority of law, and was not a protection to them or either of them, and did not authorize them or any of them to enter upon the premises of plaintiff, or to sell or remove her personal property or to destroy her business. And that the defendants Hoxsie and Muther took such part in the pretended legal proceedings and in the removal and destruction of plaintiff's property and business as to make them equally liable with the defendant Eddy." The court further instructed the jury, with respect to the actual damages the plaintiff was entitled to recover, as follows: "The only question for your consideration is the value of the property that was taken or removed or converted by these defendants, and I charge you that they are all jointly liable. You will make such an estimate as will be the plaintiff's actual damages for the conversion and removal of her property, and, in addition, such reasonable sum as is just and right to compensate her for the loss of her business, which was destroyed. That is the actual damage, and that amount of money you are bound to return in any event in this case." The court further instructed the jury, with respect to the actual and exemplary or punitive damages the plaintiff was entitled to recover, as follows: "I charge you that in this case the plaintiff is entitled to recover her actual damages, that is, such a sum of money as would fairly and reasonably compensate her for the loss and injury to her personal property and the destruction of her business; and, if you conclude from the evidence that the conduct of the defendants was malicious in removing or destroying her property, exemplary or punitive damages may be given in addition to the actual

damages sustained, as a kind of punishment to the defendants, with a view to preventing similar wrongs in the future. Such damages are given in the cases where the evidence shows malice, gross negligence, or oppression on the part of the defendants; and if in this case you find from the evidence such an element entering into the conduct of the defendants, it is your right and privilege to give to the plaintiff, in addition to her actual damage, such a sum as exemplary damages as in your judgment is just and proper under all the circumstances of the case."

The jury returned a verdict in favor of the plaintiff, and against all three of the defendants, for the sum of $5,000. The case is brought here for review on writ of error.

James E. Fenton, W. T. Hume, Ira D. Orton, and Campbell, Metson & Campbell, for plaintiffs in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court.

The defendants, in offering the papers in the case of Hoxsie v. Nodine in the so-called "municipal court" at Anvil City, did not offer them as the evidence of an adjudication in a de facto court, nor as the evidence of proceedings in arbitration and award, and the objection to the ruling of the court in admitting the papers in evidence for the sole purpose of reducing damages or rebutting the evidence or inference of malice, gross negligence, or oppression on the part of the defendants, does not distinctly and specifically present the question whether the papers were admissible for the other purpose indicated, and we express no opinion upon that subject.

Among the errors assigned are the refusal of the court to instruct the jury to return a verdict in favor of the defendant Muther, or to grant a nonsuit in his favor, or to dismiss the action as to him, and the instruction of the court to the jury that the defendant Muther was equally liable with the other defendants. The absence of testimony tending to show that the defendant Muther was a joint trespasser in the proceedings against the plaintiff, or that he had any relation to such trespass or proceedings other than as the purchaser of the tent property at public sale, renders the refusal of the court to instruct the jury as requested by the defendant clearly erroneous. As held by the Supreme Court of Oregon in Cooper v. Blair, 14 Or. 255, 12 Pac. 370, in an action against several for the conversion of property, where it appears that the acts complained of were committed by the defendants severally, at different times, and there is nothing to show any concert or combination between the parties to do the acts charged, no recovery against all the defendants can be had, and a judgment of nonsuit is proper. In support of this doctrine the court quotes approvingly from section 308 of Pomeroy's Code Remedies, where it is said:

"In order, however, that the general rule thus stated should apply, and a union of wrongdoers in one action should be possible, there must be some community in the wrongdoing among the parties who are to be united as codefendants; the injury must in some sense be their joint work. It is not enough that the injured party has on certain grounds a cause of action against one for the physical tort done to himself or his property, and has on entirely different grounds a cause of action against another for the same

physical tort. There must be something more than the existence of two separate causes of action for the same act or default to enable him to join the two parties liable in the single action. This principle is of universal application."

In other words, the plaintiff, having alleged a joint tort, must prove a joint conversion. Dahms v. Sears, 13 Or. 47, 65, 11 Pac. 891.

It appears to have been the practice at one time in Pennsylvania to permit the joining of two or more defendants between whom there had been no concert of action, and under the allegation of a joint tort prove the separate torts of each defendant, leaving the court and jury to select the party legally responsible. But the rule no longer prevails in that state. Minnich v. Electric Railway Co., 203 Pa. 632, 53 Atl. 501. Assuming, however, that there was testimony tending to establish a joint liability on the part of all of the defendants, it was for the jury, and not the court, to pass upon the testimony and determine that fact; and the court, in taking that question from the jury and giving the instructions that the defendants were all jointly liable, committed palpable error. The same observation is applicable to the instruction concerning the liability of the defendants to exemplary or punitive damages. The instruction left the jury to infer that if they found malice, oppression, or gross negligence on the part of any one of the defendants in the commission of the alleged trespass, they were all jointly liable in punitive or exemplary damages. With respect to the defendant Muther there was not, as before stated, a particle of evidence tending to show that he had any other relation to the proceedings against the plaintiff than as a purchaser of the property at a public sale. Before the sale he had in no way participated in the acts of Hoxsie and Eddy, and his purchase did not of itself make him a participant in the wrongful seizure, and he cannot be made a trespasser by relation. Gloss v. Black, 91 Pa. 418. Moreover, he offered to return the property to the plaintiff immediately after the purchase. If the jury believed his testimony in this regard, he thus relieved himself from any possible charge of malice, oppression, or gross negligence. But this question was not submitted to the jury. The court drew no distinction in law between the acts of the several defendants and their liability for actual and exemplary or punitive damages.

The judgment is reversed, with instructions to the court below to grant a new trial.