[Filed December 6, 1886.]

## THOMAS COOPER *v.* T. J. BLAIR ET AL.

TROVER AND CONVERSION—JOINDER OF PARTIES—NONSUIT.—In an action against several for the conversion of wheat stored in a warehouse, where it appears that the acts complained of were committed by the defendants severally, at different times, and there is nothing to show any concert or combination between the parties to do the acts charged, no recovery against all the defendants can be had, and a judgment of nonsuit is proper.

SAME.—To enable a plaintiff to join several tort feasors in one action, there must be some community in the wrong-doing among the parties so united.

SAME—PLEADING—AMENDMENT.—In such an action, where the plaintiff fails at the trial to show participation by some of the defendants in the wrong charged, it seems he may amend his complaint by omitting such parties.

BENTON COUNTY. Plaintiff appeals. Affirmed.

*John Kelsay* and *J. W. Rayburn*, for Appellant.

In an action for tort against several, when it appears on the trial that some are guilty and some are not, the plaintiff may have judgment against those found guilty. (Addison, Torts, § 1321; Pomeroy's Rem. 307; *Tracy* v. *Cloyd*, 10 W. Va. 19; *Nicol* v. *Glennie*, 1 M. & S. 589; *Cowan* v. *Burgess*, 5 Am. Dec. 668.) A tenant in common of personal property may maintain an action of trover against his co-tenant, who has shipped or sold the entire property, so that the other thereby loses the property. (*Yamhill Bridge Co.* v. *Newby*, 1 Or. 174; *Goell* v. *Morse*, 126 Mass. 480; *Brightman* v. *Eddy*, 97 Mass. 478; *Weld* v. *Oliver*, 38 Mass. 559; *Agnew* v. *Johnson*, 55 Am. Dec. 567; *Williams* v. *Chadborne*, 6 Cal. 559; *Dyckman* v. *Valiente*, 42 N. Y. 549; *Ripley* v. *Davis*, 15 Mich. 78; *Warren* v. *Alen*, 44 Am. Dec. 406; Freeman on Cotenancy, Sec. 366, 367.) To authorize a court to nonsuit a plaintiff, there must be such a total failure of proof of a material allegation of the complaint, as would require the court to set aside the verdict for want of evidence, if the jury were to find for the plaintiff. (Code, §§ 243, 244; *Grant* v. *Baker*, 12 Or. 329; *Salmon* v. *Olds and King*, 9 Or. 488; *Cogswell* v. *Or. & Cal. R. R. Co.*, 6 Or. 417; *Tippin* v.

*Ward*, 5 Or. 450 ; *Southwell* v. *Beezley*, 5 Or. 458.) We have never claimed, and do not now, that we can have a verdict against *all* of the defendants charged, unless we prove that they jointly took and converted our wheat. Each tenant in common of this grain had a right to sever his part from the common mass, and dispose of it as he saw fit, but he must not take more than rightfully belongs to him. (*Fobes* v. *Shattuck*, 22 Barb. 568 ; *Channon* v. *Lusk*, 2 Lans. 211 ; *Fiquet* v. *Allison*, 12 Mich. 328 ; *Lobdell* v. *Stowell*, 37 How. Pr. 88 ; *Gardner* v. *Dutch*, 9 Mass. 427 ; *Wilson* v. *Nason*, 4 Bosw. [N. Y.] 155 ; *Ryder* v. *Hathaway*, 21 Pick. 298 ; *Morgan* v. *Gregg*, 46 Barb. 183.) If he take more, an action will lie against him by the party injured. (*Tripp* v. *Riley*, 15 Barb. 334 ; *Newton* v. *Howe & Drury*, 29 Wis. 535 ; Wells on Replevin, §§ 203 and 204 ; *Kimberly* v. *Patchin*, 19 N. Y. 337.)

*John Burnett*, *J. R. Bryson* and *Tilmon Ford*, for Respondents.

The testimony shows that the defendants took whatever wheat they got from his warehouses at different times, and that they never acted together in any manner nor at any time ; hence they could not be guilty of a joint conversion; and if not, then plaintiff must fail, unless he had dismissed his joint action and proceeded against some one of the deft's. (2 Addison, Torts, Sec. 1321 ; *Guille* v. *Swan*, 10 Am. Dec. 234 ; *Chapman* v. *Palmer*, 77 N. Y. 51 ; *Kays* v. *Little York Min. Co.*, 53 Cal. 724 ; *Dahms* v. *Sears*, 13 Or. 47.) A verdict in trespass against all the defendants jointly cannot be sustained on evidence which fails to implicate all. (*Grusing* v. *Shannon*, 2d Ill. App. 325 ; *Dahms* v. *Sears*, *supra*.)

THAYER, J.—The appellant commenced an action in the court below against the respondents, to recover damages for an alleged conversion of a quantity of wheat which the appellant had stored with the respondent Blair at Corvallis, Benton County, Oregon. Blair had two warehouses in which he

received wheat for storage, and dealt in buying and selling wheat. He received from appellant eight hundred and thirty-three bushels, Oct. 25, 1882, at his warehouse on First street, Corvallis; four hundred and sixteen 7–60 bushels, September 19, 1885, at the same warehouse; and at or about that time received from him seven hundred and sixteen 46–60 bushels at said warehouse. A part of the wheat so stored, the appellant subsequently sold to Blair. He alleges that he had thirteen hundred and sixty-five bushels and some pounds of wheat after the sale to Blair, which he charged the respondents with having converted. The respondents, the Salem Capitol Flouring Mills Company (Limited), J. E. Henkle, Jacob Henkle and John Kitson, and W. B. Hamilton, Zephin Job and B. R. Job, answered separately; that is, the Flouring Mills Company filed its answer, the Henkles and Kitson, who were partners, filed their answer jointly, and Hamilton and Zephin and B. R. Job, who were also partners, filed their answer jointly. The said respondents in their said several answers denied the main allegations of the complaint, and set up certain new matter. The Flouring Mills Company alleged that they purchased and paid full cash value for all of the wheat they received, or that came into their possession, at or about the time of the alleged conversion. Henkle & Co. alleged that they were the owners of a quantity of wheat which had been stored in said warehouse; that it was mixed in bins with other wheat of like grade and quality, with the assent of the owners thereof; and that they took only 2,800 bushels of wheat, which was a less amount than that stored therein belonging to them, and which was delivered to them by said Blair. And Hamilton & Co. alleged that they were the owners of about 13,132 bushels of wheat, which had theretofore been stored in said warehouse, mixed as Henkle & Co's wheat was, and that Blair delivered the same to them; which wheat, so received by the respondents, was alleged in the several answers to be the wheat they were charged with having converted. The said Blair filed no answer to the complaint.

Upon the trial of the action, the respondent's counsel con-

tended that there could be no recovery against the respondents, unless the alleged conversion of the wheat was their joint act ; and the circuit judge who presided at the trial seemed to be of that opinion, as he finally nonsuited the appellant, apparently upon the ground that the respondents' acts in the premises were several ; that is, the Flouring Mills Company acted for themselves, Henkle & Co. for themselves, and Hamilton & Co. for themselves.

The theory of the appellant's counsel seems to have been that they had a right, after proving the amount of wheat appellant had in the warehouse at the time of the alleged conversion, to show how much the Flouring Mills Co. took out of it, how much Henkle & Co. took out of it, and how much Hamilton & Co. took out of it; and after ascertaining what portion of the wheat so taken belonged to him, recover from said several companies the amount taken by them, respectively, of his wheat.

It must be conceded, I think, that these several companies acted independently of each other in what they did in regard to the taking the wheat. There is not the slightest trace of testimony in the case, as I can discover, that they combined or coöperated in taking away any wheat from the warehouse in question. The taking was at different times, and clearly several acts, and resulted from their several motives. Each company took the wheat they supposed they were severally entitled to, and at their own instance, and upon their own responsibility. And unless the appellant's counsel can maintain the theory before indicated, the nonsuit granted by the circuit judge must stand.

There were a number of exceptions taken to the rulings of the court at the trial, in excluding testimony offered on the part of the appellant ; but they are unimportant, unless the appellant had the right to recover severally against the respondents, as before indicated. The view the appellant's counsel suggested in reference to this question seems hardly tenable, yet it has been presented with much more force and ability, and is sustained by many of the earlier decisions. (*Jackson* v. *Woods et al.*, 5 Johns. 278, and cases there cited.) That

was a case of ejectment against five defendants, who entered into the consent rule jointly, and pleaded jointly. Two of the lessors of the plaintiff proved title to the premises in themselves, and that the defendants were in possession in separate and distinct parts, but not jointly. The jury found each defendant separately guilty, as to that part of the premises in his separate possession, and not guilty as to the other parts, possessed by the other defendants; and the court held that the plaintiff was entitled to judgment against all the other defendants severally, according to the verdict. Kent, who was then chief justice of the court, laid it down as a rule in actions for torts against several who joined in a plea, that the jury might find some guilty of part, or at one time, and the other guilty of another part, or at another time, and that in either of those cases they might assess several damages; and referred to several early English cases that sanction such course.

This case is very similar in principle to that of *Jackson* v. *Hazen*, 2 Johns, 437. There the action was against five defendants, who entered into the consent rule jointly, and pleaded jointly; but it appeared upon the trial that two of them occupied distinct parcels of the premises in severalty, and that the other three possessed the residue of the premises jointly. It was contended for the plaintiff, that all the facts necessary to be proved in an action for trespass were admitted by the consent rule, and that the defendants could have prevented the difficulty and hardship that might arise out of a claim to the mesne profits by appearing separately for their distinct parcels; but the court held that the plaintiff was bound to prove a joint possession of all the defendants, and that the two defendants who held separately were entitled to judgment against the plaintiff. Spencer, J., who delivered the opinion of the court, said that the only case which seemed to warrant a general judgment against all the defendants was that of *Claxmore* v. *Scarle et al.*, 1 Ld. Ray. 729, which stated the practice to be, where some of the defendants appeared at the trial and confessed lease, entry and ouster, and the others did not, that with regard to such as did not appear, a verdict was to be

entered for their not appearing to confess, &c.; but the court held that this rule did not proceed upon the principle arising in the case; nor did it necessarily follow that the rule contemplated distinct possession as to those who did not confess; that in many respects there was an analogy between actions of ejectment and trespass, and perhaps, in all respects, except as to the quantity of interest necessary to maintain the one or the other; that in an action of trespass against several, it would not be competent for the plaintiff to give in evidence the distinct act of the individuals, without showing also that such acts were in performance of a concert and agreement among all the defendants; then, and in that case only, would all be responsible for the act of each. In this view Chief Justice Kent and Van Ness, J., concurred.

These two cases have been referred to in subsequent decisions of the New York courts, but have never been cited except in ejectment proceedings, as they were conducted at common law; and all that is said by the court in either of them is only authority in ejectment suits as formerly prosecuted. The doctrine these cases attempted to establish was evidently intended to soften the rigor of the rules in ejectment cases. A strict enforcement of them left the defenbant no grounds to stand upon, except to defeat the lessor's claim of title to the premises, as he was compelled to confess the leasing, entry and ouster as a condition upon which he was permitted to defend. This, however, operated as no hardship, except when the action was against several, each occupying distinct parcels of the demanded premises. In that case, if the fiction of law applicable to that class of actions were carried out literally, the defendants would each have to confess, or be deemed to have confessed, the ouster as to the whole, and be liable to the whole amount of mesne profits. And to avoid so palpable an injustice, it was necessary either to compel the plaintiff to enter into a separate consent rule with each defendant, or not allow a recovery without proving a joint possession of all the defendants, as in *Jackson* v. *Hazen, supra;* or by allowing a finding of guilty against each defendant separately, as to the part of the premises in his sep-

arate possession, and not guilty as to the balance, as in *Jack-son* v. *Wood*, *supra*. It was only an expedient adopted to pre-vent injustice ; and, in order to preserve consistency, I imagine that Chancellor Kent in the latter case cited the cases of *Player* v. *Warn & Dews*, Cro. Car. 54, and *Dickson et al.* v. *Jenkins*, Cro. Car. 178 ; *Sir John Heydon's Case*, 11 Co. 5, and Tidd's Pr. 805 ; for I very much doubt that that distinguished juri~t would ever have decided, as an abstract question, that parties severally committing distinct trespasses could be united in an action, and several judgments be recovered against them.

Whatever may have been the rule upon the subject in the English courts, no such practice ever obtained in the United States, unless under special statutory provision. Nor do I be-lieve that the later English authorities recognize any such doc-trine. Chitty says: " And if a joint action of trespass be brought against several persons, the plaintiff cannot declare for an assault and battery by one, and for the taking away of goods by the others, because these trespasses are of several natures. And in trover, against several defendants, all cannot be found guilty in the same court without proof of a joint con-version by all." (1 Chitty Pl. 86.) And it is declared in note *i.* to the case of *Wilbraham* v. *Snow*, 2 Saund. Pt. 1, p. 47, in these words : " It is plain that several defendants cannot be found guilty in trover without evidence of a joint conversion ; therefore, where bankrupts and their assignees were joined as defendants in an action of trover, and a verdict passed against all the defendants, upon evidence that the bankrupts, before their bankruptcy, had converted the goods of the plaintiff by pledging them without authority, and that the assignees after the bankruptcy had refused to deliver them up on demand, the court held that the conversions were separate, and granted a new trial for want of evidence of a joint conversion." (Cit-ing *Nicoll* v. *Glennie et al.*, 1 M. & S. 588.) In Add. Torts, Sec. 1321, the same rule is declared, and same reference made to 1 M. &. S. 588. The author further remarks in that sec-tion, that " where an action has been brought against several joint trespassers, the evidence must be confined to the joint offenses in which all are implicated."

Mr. Pomeroy, in his work on Remedial Rights and Remedies, Sec. 308, after stating in the previous section that those who have united in the commission of a tort to the person or the property, whether the injury be done by force, or be the result of negligence or want of skill, or of fraud and deceit, are generally liable to the injured party, without any restriction or limit upon his choice of defendants against whom he may proceed, says: "In order, however, that the general rule thus stated should apply, and a union of wrong-doers in one action should be possible, there must be some community in the wrong-doing among the parties who are to be united as co-defendants; the injury must in some sense be their joint work. It is not enough that the injured party has on certain grounds a cause of action against one for the physical torts done to himself or his property, and has, on entirely different grounds, a cause of action against another for the same physical tort; there must be something more than the existence of two separate causes of action for the same act or default, to enable him to join the two parties liable in the single action." This principle, he there says, is of universal application.

In *Forbes* v. *Marsh et al.*, 15 Conn. 384, the court held, where the plaintiff, in an action of trover against B and C, introduced evidence proving a conversion by B only, without the participation or knowledge of C, that it was not then competent to prove a distinct conversion by C.

This was the predicament the appellant found himself in at the trial of this case. He had joined the three parties: The Flouring Mills Co., Henkle & Co., and Hamilton & Co., in a single action, and then attempted to introduce evidence proving a conversion by one of them only. He could only be permitted to prove an act of conversion upon the part of one of the parties, under an offer to show that the others participated in the action in some way, and unless he could make such showing he would be confined to his claim against the one party. Or he might have been permitted to show that all the parties took and carried away the wheat at different times, under an offer to show that there had been a combination entered

into between them for that purpose ; and if he failed to show the common purpose, he would have had to submit to a nonsuit, unless the court permitted him to amend his complaint and proceed against one of the parties. Section 99 of the Civil code is broad enough, I think, to have allowed such an amendment; but to attempt to proceed against the respondents jointly on account of a several liability is not warranted by law, in such a case as this. We virtually held that, in *Dahms* v. *Sears et al.*, recently decided by this court.

The difficulty in this class of cases has been in attempting to apply the general rule that torts are joint and several, and that in a joint action against several defendants, one or more may be found guilty, and the others acquitted ; but in the class of cases to which that rule applies, as was said by Judge Dillon, in *Turner* v. *Hitchcock*, 20 Iowa, 316, the injury sued for is an entirety. " The injury is single, though the wrong doers may be numerous." It has no application to a case where distinct injuries have been committed by the several defendants. If B were to go to A's barn, and unlawfully carry away ten bushels of his wheat, and C, in like manner, were to go at another time and carry away thirty bushels more, and there had been no concert of action between them in the matter, but each had acted for himself, it would be absurd to sue them together in one action for the conversion of the amount of wheat so taken. Yet this is the position the appellant occupied in the case at circuit, and he either had to confine his proof to one of the acts and to the party committing it, or obtain leave of the court to amend his complaint, after the proofs disclosed the dilemma he was in, or submit to a nonsuit. There could have been only one recovery in the case, and that had to be against the party or parties who did the act for which it was obtained.

In *Currier* v. *Swan*, 63 Maine, 323, in an action of trespass for an assault against four parties, the jury rendered a verdict in regular form against them all, but appended to it an apportionment of the damages among them severally. The court held that the appended part must be rejected; that but one verdict could be rendered; and that, therefore, the damages

must be joint and not several; that the question was, what damages had the plaintiff sustained; and that for these, whatever they were, all the participants in the assault were liable; that there were no degrees of guilt; and referred to several Massachusetts cases as sustaining that view. And in Sutherland on Damages, it is said that, "the extent of individual participation in, or of expected benefit from, a joint tort is immaterial; each and all the feasors are liable for the entire damage." (1 Sutherland, Dam. 211.) We think the judgment of the circuit court should be affirmed.