ALICE R. THOMS V. LOUIS B. THOMS.*

1. The inchoate dower of a wife is an incident of the seizin of the husband and can only be conveyed by her in connection with the husband's transfer of title.

2. While post nuptial contracts of separation are recognized in Ohio, neither husband nor wife will be aided by the courts in the enforcement of claims arising out of them if the contracts bear the appearance of irregularity or unfairness.

HOSEA, J.; FERRIS and PFLEGER, JJ., concur.

This case comes into this court from findings and judgment rendered at the special term in October, 1903. The suit was brought by Louis B. Thoms against Alice R. Thoms, his divorced wife, to quiet title to real estate, as against her inchoate right of dower.

The controversy here centers about a post-nuptial agreement executed by the parties in writing at Cincinnati, on January 24, 1896, providing in substance, as follows:

That the husband, L. B. Thoms, should pay to the wife, Alice R. Thoms, $100 per month for three years, unless she should remarry within that period—this to be "not only for the benefit of said Alice R. Thoms, but also in full of all obligations and liabilities of said Louis B. Thoms, for the support and maintenance of their child, Joseph B. Thoms; and in full of all right and claim for alimony, maintenance, or support, or property interests in the estate, or earnings of Louis B. Thoms, against him for all time to come."

She was also to have the household furniture belonging to either of them, excepting the books and pictures; and in consideration of what precedes, she was to quit-claim by deed, contemporaneously with the contract, all her dower or other interest in all real estate in which Louis B. Thoms has any interest.

It is admitted that Mr. Thoms paid the $3,600, also certain small debts incurred by Mrs. Thoms, as indicated by

---

* Affirmed by Supreme Court, 73 O. St. 333.

memorandum on the contract, aggregating less than $300, and that Mrs. Thoms executed the quit-claim of her dower to Mr. Thoms' brother.

The original petition sets up this contract, as the basis of affirmative relief, and alleges that in making it the wife was represented by counsel, upon whose advice she acted; that said counsel investigated his financial condition, and that the amount of said payments and other considerations were named and exacted by them as commensurate with her needs and her inchoate right of dower.

Upon demurrer, the court below, upon the doctrine of liberal construction, held this to be the equivalent of an allegation that the contract was in itself fair, just and right.

The answer admits the execution of the contract, and of the quit-claim deed; but pleads gross inadequacy of consideration for the quit-claim as disproportionate to the husband's means, and fraudulent inducement to its execution by reason of her inexperience and reliance upon the misrepresentations of the husband.

The issues thus presented challenge the adequacy and fairness of the consideration for the release of dower involved in the contract; and the suit is in one aspect for the specific enforcement of the contract against the wife, by way of estoppel.

This was substantially the ruling of the court below, which held upon demurrer to the petition, that the quit-claim conveyance of dower made by Mrs. Thoms, pursuant to the contract, was a nullity; but that, nevertheless, the contract, construed as a covenant not to assert a contingent dower claim, would be binding, if fair and reasonable and upon proper consideration.

The trial court bases its final decree for the plaintiff below upon findings of defendant's delay in asserting her claim to dower and consequent lack of equity in her defense, and the change of plaintiff's position since the contract was made; and, lastly, a general finding that the defendant (the wife) did not have any estate by way of inchoate right of dower or otherwise, in the property described in the petition; but the court expressly negatives

any finding upon the inadequacy of the settlement between the parties.

These actions being excepted to are now brought before us by the petition in error for review upon a full bill of evidence.

The quit-claim deed purporting to convey the inchoate right of dower to a third party, not the husband's grantee of title, was undoubtedly void, as a conveyance, upon well-established principles. The inchoate dower right of a wife is an incident of the seizin of the husband, and can only be conveyed by the wife in connection with his own transfer of title. *Weaver* v. *Gregg*, 6 O. St., 547 (553).

It is, though inchoate, an interest in the land created and vested in her by law for her benefit, and capable of alienation only in the mode provided by statute; and this limitation inheres in the nature of the estate itself. *Miller's Adm'r* v. *Woodman*, 14 O., 518 (521); *Douglas* v. *McCoy*, 5 O., 527 (where it is said: "The law will not permit the alienation of such possible contingent interests"); *McArthur* v. *Franklin*, 16 O. S., 193; *Black* v. *Kuhlman*, 30 O. S., 196; *Rosenthal* v. *Mayhugh*, 33 O. S., 155.

The contention of the defendant in error here is that, conceding the invalidity of the conveyance made by the wife, yet the contract pursuant to which the deed was executed, evidenced her intention to convey; and that the court should give effect to such intention by way of estoppel.

Can the court give effect indirectly through the medium of estoppel to a contract which the law prohibits?

It is a recognized rule in equity, that the void contract of a person under disability can not be made good by estoppel. The reason assigned for the rule is that as no remedy could be had upon the void deed of conveyance, it would be against the policy of the law to allow the same result to be reached through the indirect medium of estoppel. Bispham's Equity, Section 293.

It is true that the common law disability of the wife to contract does not now exist in Ohio; but as we have already shown, the disability of the married woman to alienate her contingent right of dower is one that is inherent in the na-

ture of the dower interest; so that the rule cited has application.

But, apart from the difficulty arising upon grounds of public policy cited, it is at least doubtful whether the doctrine of laches can be invoked as a basis of estoppel against an inchoate and contingent right of dower under the circumstances of this case.

It is well settled that estoppel can not be predicated upon ante-nuptial contracts.

This rule was applied in 27 O. St., 50, *Grogan* v. *Garrison,* affirming the decision of this court upon an ante-nuptial contract, and deed of settlement executed in conformity therewith, and intended to be effective as a jointure in lieu of dower. Three years after the husband's death, the widow filed her petition against the heir to have dower set off. Being reserved to the General Term, this court found that the deed of settlement was void and that no estoppel existed by virtue of the contract, to bar the widow's claim.

But in the case of *Rosenthal* v. *Mayhugh, supra,* our Supreme Court supports its action upon the authority of *Bullock* v. *Griffin* (1 Strobhart's Equity Rep., 60), which was upon a post-nuptial contract and conveyance of dower and an attempt to repudiate it by suit against the purchaser of the estate for dower, seven or eight years after the husband's death. It was there held that laches by failure to assert the right for years after it had become absolute by death of the husband, together with the retention of the consideration during and after coverture, may call into operation the doctrine of estoppel.

But this case, as also that of *Rosenthal* v. *Mayhugh,* furnishes authority, at least by implication, for the correlative doctrine that laches can be predicated only upon a right capable of assertion—a dower right, for example, rendered absolute by the husband's death. In the Rosenthal case the court says:

"A widow before dower is assigned, having only a vested right to be endowed, can not at law, convey such right—she can only release it. Yet, being a *femme sole,* she can

effectively bar such right by way of estoppel. Being a *femme sole,* equity will treat her as such and enforce her contracts in relation to her unassigned dower where she has estopped herself by her acts or contracts" (p. 167).

But we are clearly of opinion that whatever force *per se* may exist in equitable defenses of this character, their practical application must depend at last upon the fairness and equity of the transactions out of which they grew. While post-nuptial contracts of separation are recognized in Ohio, the rule is well established that neither husband nor wife will be aided in the enforcement of claims arising out of them if the contracts "bear the appearance of irregularity or unfairness." *Bettle* v. *Wilson,* 14 O., 257, citing 2d Story's Equity, Sections 652-654.

This rule is reiterated later with the requirement that the contract must be "reasonable in itself and fairly made between husband and wife." *Thomas* v. *Brown et al,* 10 O. St., 247. Still later in *Garver, Exr.,* v. *Miller,* 16 O. St., 528, these conditions are emphasized, and the court says:

"It is essential that the terms of the contract shall be fair, reasonable and just to the wife, in view of all the circumstances of the case and of the parties, at the time the contract was made. If it becomes a question of facts, the proof must lead the mind of the chancellor satisfactorily to the same conclusion. In addition to this, facts must be averred or proved, or both, as the exigencies of the case require, showing that the terms of the contract in favor of the wife were fair, reasonable and equitable under the circumstances of the parties at the time it was made. And this doctrine runs through all the cases bearing on the subject."

These cases are but reiterations of the ancient doctrine of equity, that heirs and reversioners were supposed, in the eye of the law, to be so liable to impositions and to be so exposed to chances of being induced to make hard and unfair agreements touching the disposition of their expectant interests that, as a matter of policy, the rule is laid

down that he who deals with them has cast upon him the burden of showing that the purchase was a fair one and the price paid a reasonable sum and of the full value. Perry on Trusts, Section 220 (and cases cited).

In the light of these authorities, and in view of the evident purpose of the law in relation to the rights of women, based upon the marital relation, it seems to us evident that the rights of the parties here, if not concluded by the consideration first above mentioned, can only be adjudicated upon a careful inquiry into the actual fairness of the contract itself. The trial court expressly refused this; preferring to rest the judgment upon other grounds. But, as the entire record is before us, showing all the facts necessary, and as this question has been fully argued before us by counsel for both parties, we feel no hesitancy in proceeding to its determination.

The contract in question purported to cover not only the contingent dower interest of the wife, but also all claim for support during coverture, and her contingent distributive share in the personal estate. She was also to assume the husband's burden of expense, care and maintenance of their minor child for three years.

The consideration for all this was to be monthly payments of $100 each, for the space of three years following the date of the contract.

It is incumbent upon the husband, who brings this contract into court as the basis of his prayer for affirmative relief, not only to establish its legality, but to "aver and prove that the terms of the contract in favor of the wife are fair, reasonable, and equitable under the circumstances of the parties at the time it was made." *Garver, Exr., v. Miller, supra.*

It is obvious that the consideration for such a contract should include a fair and reasonable present equivalent for the surrender of the several rights (1) of maintenance during coverture, (2) distributive share in the ultimate personal estate; (3) dower in real estate; and in the contract in question there should have been an additional amount for the support of the infant for three years.

The oral testimony of Mr. Thoms, and his letters, consti-
tute the only evidence bearing upon his financial condition
and style of living at and up to the date of the contract. But
it shows that he was then the owner of property in Cincin-
nati, producing a rental income approximating $5,000 per
year; that when keeping house, he paid house rent of $100
per month; with a furniture equipment costing about $5,000
or $6,000, and that they subsequently rented their house,
furnished, to others for $150 per month and lived at the
Hotel Alms until about the date of the contract.

Mr. Thoms makes no satisfactory showing of his actual
means, but places valuations on the real estate described
in the petition, and subtracts the mortgage debts, and on
this basis his counsel figures the dower interest, which we
quote from the brief before us as follows:

"Therefore, according to the mortality tables (Giauque
& McClure's present-value tables), Mrs. Thoms' inchoate
right of dower in the Main street property would have been
$2,145.95. Her interest in the equity in the $15,000 on the
Fifth street property would have been $1,287.60. Her in-
terest in the other real estate has been fixed by the Common
Pleas Court at $227.60."

Counsel then concedes a dower value in the Walnut street
stable property of $1,296.09 and admit a total present value
of $4,957.24 for the dower interest; and claim that the
$3,600 paid under the contract, together with $1,400 real-
ized by Mrs. Thoms by sale of the furniture, about equaled
this amount and was therefore a fair consideration for
the contract.

But this presentation, besides entirely ignoring the other
elements entering into the consideration of the contract, as
measured against the terms, estimates the dower interest
simply upon the basis of residual value of the estate after
deducting the face of the mortgages. This, however, is
erroneous under the Ohio rule established in *Mandel* v.
*McClure,* 46 O. S., 407 (overruling *Bank* v. *Hinton,* 21 O.
St., 507), which holds the release of dower in connection
with the husband's mortgage to be a pledge of her contin-
gent dower right to the mortgagee or his privies alone, for

the mortgage debt, and that in case of sale under the mortgage, the ascertained value of her contingent right of dower in the entire proceeds of sale is to be satisfied out of the balance left after payment of the mortgage debt before further distribution.

Without attempting here to recast the figures on the correct basis, it is sufficient to note that the value of the contingent dower right in question under the rule of law shown, is largely in excess of that figured by counsel, perhaps more than double; and if, from the $5,000 claimed to have been paid as the consideration, we deduct the proceeds of the furniture which Mr. Thoms admitted giving to his wife about three years prior to the contract, the discrepancy is still greater.

We are of opinion, therefore, that the defendant in error has not met the requirements of proof on this point, and that the consideration was not fair and equitable to the wife under the circumstances. Neither do we think that the acts or omissions of his former wife in connection with the contract or any obligations growing out of it, had any such relation to the re-marriage of Mr. Thoms as to constitute an estoppel by conduct. The change of Mr. Thoms' position in this regard seems to have been entirely voluntary, and it is difficult to see how he could have been in any way deceived into taking this new step by any act or failure to act on the part of the wife.

There can be no fraud where all parties are equally informed of the facts and mutually assent to them. It is essential to an estoppel of this kind that the conduct on which it is based must actually have been the inducing cause for the action of the party who seeks to set it up. Bispham's Equity, Sections 289-291.

Mere silence and the mere retention of a sum paid, which she has practically accepted in lieu of all claim for alimony, and which in fact was a mere monthly stipend for a limited time to an amount not exceeding what she would have fairly been entitled to for maintenance of herself and child for that period alone if no contract had been made, can not, we think, bar her rights in respect of dower. In

fact, the entire consideration paid might be regarded as fairly applicable to and absorbed by the claims other than dower, leaving nothing whatever applicable to the dower interest. But even considered as applicable wholly to the dower claim, which manifestly was not the intention of the contract, as seems to have been assumed in the argument of defendant in error, the payment made falls distinctly short of a fair and reasonable equivalent.

We do not regard the divorce obtained by Mr. Thoms in Dakota as an element affecting the issues here under Ohio Statutes and decisions.

Upon consideration of the whole case, we are of opinion that the judgment below should be reversed, and it is so ordered.

Proceeding to render such judgment as the court below should have rendered (*Stein v. Rose,* 17 Ohio St., 471), we find that the plaintiff is not entitled to the relief prayed for, and judgment will be entered, dismissing the action at his costs.

*Gordon, Granger & Dewitt,* for plaintiff in error.
*Bromwell & Bruce,* for defendant in error.