Argued June 23, decided August 18, rehearing granted October 6, 1908;
reargued November 25, decided December ·15, 1908.

## KREBS HOP CO. *v.* TAYLOR.

[97 Pac. 44; .98 Pac. 494.]

REPLEVIN—TAKING AND DETENTION.

1. Replevin will lie, though the taking was not unlawful, where there is a wrongful retention of property, the right to the immediate possession of which is in plaintiff.

SAME—DEMAND.

2. The question of the original taking being unlawful is unimportant in replevin, except on the question of demand for return of the property as a condition precedent to commencing the action; demand being unnecessary if the seizing was unlawful.

SAME—PLEADING—CONSTRUCTION—"TEAM."

3. Plaintiff brought replevin for a pair of horses, a buggy, and a set of harness. The answer averred that on a certain day the property was in the possession of M. K., who left the horses on a city street for more than three hours, without food or shelter, which constituted cruelty to the animals and a violation of an ordinance, requiring defendant, as city marshal, to take up, feed, and shelter the horses, which he did, putting them in the stable of D., who notified M. K. thereof, whereupon M. K. directed that the team be brought to him, but afterwards ordered the team to be taken back to the stable. The answer made no mention of the buggy or harness. A witness testified that he remembered the night defendant took the team and buggy. This was the only declaration tending to show defendant seized the vehicle, and there was no testimony as to the harness. *Held*, that the word "team," as used in the pleadings and testimony, would be treated as including the vehicle and harness, as well as the horses.

SAME—RIGHT TO POSSESSION—PLEADING AND PROOF.

4. To be entitled to recover in replevin plaintiff's right to have the property delivered to him, when the action was commenced, must be averred in his pleading and proved, and, in the absence of positive testimony, the inquiry is: Can his right to immediate possession be inferred or presumed from the state of the pleadings or from the evidence?

SAME.

5. In replevin for a team, the answer averred that when the property was taken it was in the possession of M. K., and this was admitted in the reply. M. K. testified that when the property was so seized he was employed by plaintiff, and that plaintiff then had possession of the property. *Held*, that as M. K.'s declaration as to possession contradicted the admission of the reply, and no motion was made to amend the reply, to conform to the testimony, the admission must control as to plaintiff's immediate right of possession, till overthrown by proof.

SAME.

6. Though M. K., from whose possession it is admitted defendant took plaintiff's property, was in plaintiff's employ, the presumption from such admission is that the right of possession remained in M. K.; Section 788, subd. 33, B. & C. Comp., declaring it a presumption that a thing once proved to exist, continues as long as is usual with things of that nature, so that plaintiff, in replevin for the property, to overcome the deduction, has the burden of showing it was entitled to the possession when the action was commenced.

REPLEVIN—PLEADING—POSSESSION.

7. An allegation, in a complaint in claim and delivery against two defendants, that they wrongfully took and unlawfully detained plaintiff's team, was equivalent to an assertion that when the action was commenced the team was in the possession of both defendants.

REPLEVIN—POSSESSION—EVIDENCE.

8. In claim and delivery against two defendants to recover a team, evidence that plaintiff asked one of them if he had put the team up, and when answered in the affirmative asked if he would get the team for him, to which he replied in the negative, indicated that such defendant was not in the actual possession of the team when the writ was served.

REPLEVIN—NATURE OF ACTION—REQUISITES.

9. The remedy of claim and delivery prescribed by Section 284, *et seq.*, B. & C. Comp., is substantially the same as replevin, which is a mixed action partly *in rem* and partly *in personam* and can be brought only against the person having actual or constructive possession of the goods when the suit is brought.

REPLEVIN—CONSTRUCTIVE POSSESSION.

10. A principal's constructive possession of goods in the hands of his agent or bailee is sufficient to entitle the owner to maintain replevin against the principal.

DISMISSAL AND NONSUIT—VOLUNTARY DISMISSAL AS TO CODEFENDANT—TORTS.

11. If plaintiff fails to prove the commission of a joint tort as alleged, he may elect at the trial as to which of the defendants he will proceed against, and may request the court to instruct the jury to find a verdict against a part of them and in favor of the others, or he may move for leave to amend, and, if granted, proceed against one or more of the defendants.

DISMISSAL AND NONSUIT—JOINT DEFENDANTS—ELECTION.

12. Section 180, B. & C. Comp., provides that judgment may be given for or against one, or more of several plaintiffs and for or against one or more of several defendants, and Section 181 declares that, in an action against several defendants, the court may in its discretion render judgment against one or more of them, whenever a several judgment is proper, leaving the action to proceed against the others. *Held*, that where the complaint in claim and delivery charged a joint liability against two defendants, but it appeared that one of them was merely holding the property as the bailee of the other, the court erred in refusing to permit plaintiff's counsel to elect to proceed against the latter and to discontinue as against the bailee.

From Polk: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by the Krebs Hop Co. a corporation, against R. J. Taylor and I. W. Dickenson to recover possession of a pair of horses, a buggy, and a set of harness, or the alleged value thereof, in case possession cannot be secured, and damages for the detention; the complaint being in the usual form. The answer denied the material allegations of the complaint, except the

incorporation of the plaintiff, and that it was the owner of the property. For a separate defense, it is averred: That on March 27, 1907, the chattels demanded were in the possession of M. Krebs, who left the horses in a public street of Independence for more than three hours, without food or shelter, which neglect constituted cruelty to animals and violated an ordinance of that city enacted to prevent inhumanity, and which requires the city marshal, for such transgression, to take up, feed, and shelter the stock at the expense of the owner; that at the time stated Taylor was the marshal of Independence, and pursuant to the municipal regulation mentioned he took the horses and delivered them to Dickenson, the keeper of a livery stable, who cared for the animals and notified Krebs that he could secure them without the payment of any charge, whereupon the latter directed that the team be brought to him, and Dickenson, complying therewith, started to take the horses to Krebs, who countermanded the instructions, and ordered the team to be taken back to the barn, where it ever since has been, subject to his command; that it would have been delivered to the plaintiff, at any time, upon payment of the reasonable charges incurred; and that the taking and care mentioned constitute the tort alleged in the complaint. The reply admitted that, at the time and place thus specified, Krebs was in possession of the property, but denied all other allegations of new matter in the answer, except as alleged in the complaint. At the trial a judgment of nonsuit was given, and the plaintiff appeals.

AFFIRMED.

For appellants there was a brief over the names of *Messrs. Carson & Cannon*, with an oral argument by *Mr. John A. Carson*.

For respondent there was a brief over the name of *Mr. Benjamin F. Jones*.

MR. JUSTICE MOORE delivered the opinion of the court.

A statement of the material testimony offered is deemed essential to an understanding of the action of the court in granting the nonsuit. M. Krebs declared upon oath: That on March 27, 1907, at Independence, the plaintiff was in possession of the property in question; that about 10 o'clock at night of that day, when he was ready to go home, he could not find his team; that soon thereafter he saw Taylor, and, having learned that he had taken the team, he asked him to get it, but the latter refused to comply with the request; and that the witness made no other demand for a return of the property. The testimony respecting the demand is corroborated by the sworn declarations of Frank Flakes, who was present when Krebs requested the marshal to return the team. L. Krebs testified that the reasonable value of the use of all the property described in the complaint was $4 a day. The court, upon objection of defendants' counsel that no demand for a return of the property was necessary, excluded copies of letters mailed to the defendants, respectively, requesting them to return to the plaintiff the chattels specified. The court was then requested to grant a judgment of nonsuit on the ground that no testimony had been offered in support of the cause of action stated, sufficient to be submitted to the jury, and that the complaint alleged a joint taking by the defendants, while the testimony tended to show that Taylor alone seized the property. When this motion was interposed, plaintiff's counsel stated that they elected to proceed against Taylor and to dismiss the action as to Dickenson, whereupon the court announced that leave to do so would be granted, if the defendants' counsel consented, but upon their refusal the action was dismissed without prejudice.

The foregoing synopsis is believed to be a fair statement of all material parts of the bill of exceptions. The

answer avers that the horses, harnessed to the buggy, were left hitched by Krebs, and that Taylor took the horses and delivered them to Dickenson; but that pleading makes no mention of the buggy or harness. Flakes stated upon oath that he remembered the night when Taylor took the Krebs Hop Co.'s team and buggy. His assertion is the only declaration tending to show that the city marshal seized the vehicle, and no testimony was offered in relation to the harness. Although two reasons are stated in the motion for the nonsuit, only one of the grounds specified will be considered, to wit: Was the testimony given at the trial, together with the inferences and presumptions deducible therefrom, sufficient to authorize a submission of the case to the jury as tending to establish the cause of action stated in the complaint? If this inquiry is answered in the negative, it will be unnecessary to examine the question as to the right of plaintiff's counsel to make the election indicated in their request.

1. At common law an action of replevin could be maintained only when the personal property sought to be recovered was wrongfully taken. In most states of the Union, however, the remedy has been extended by statute so as to include an unlawful detention, and the gist of the action is now regarded as the wrongful holding by a person of goods, chattels, etc., the right to the immediate possession of which is in another: Cobbey, Replevin (2 ed.) § 12; *Nunn* v. *Bird,* 36 Or. 515 (59 Pac. 808).

2. The original taking by Taylor, therefore, ceases to be of much importance, except for the purpose of determining whether or not it was necessary to make a demand for the return of the property, as a condition precedent to the commencement of the action, for, if the seizing was unlawful, such a demand was not required: *Surles* v. *Sweeney,* 11 Or. 21 (4 Pac. 469) ; *Moorhouse* v. *Donaca,* 14 Or. 430 (13 Pac. 112).

3. The answer, not having denied the plaintiff's own-
ership of the property, thereby admitted the averment
in the complaint to that effect, thus leaving for trial only
the issue of the right of possession. No direct testimony
was offered tending to show who was entitled to the
immediate possession of any part of the property, though
M. Krebs stated upon oath that the team was taken from
the plaintiff. The word "team," as employed in a statute
exempting certain property from execution, has been
held to mean one or more horses with their harness and
the vehicle to which they are customarily attached for
use: *Brown* v. *Davis,* 9 Hun. (N. Y.) 43. Notwith-
standing the paucity of the testimony respecting the
buggy and the harness, we shall treat the word "team"
as used in the pleadings and by the witnesses as includ-
ing the vehicle and the gear by which it was attached to,
and propelled by, the horses.

4. A text-writer, in discussing the authority of a plain-
tiff to recover possession of specific chattels, says: "This
right to have the property delivered to him, at the time
of the commencement of his action, must be unequivo-
cally averred in his pleading and affirmatively proved on
the trial, or he cannot recover": Shinn, Replevin, § 441.
In the absence of positive testimony on this subject, the
question to be considered is reduced to the inquiry: Can
the plaintiff's right to the immediate possession of the
property be inferred or presumed from the state of the
pleadings or from the evidence?

5. It will be remembered that the answer avers that
on March 27, 1907, when the property was taken, it was
in the possession of M. Krebs, which allegation is
admitted in the reply. He testified that at the time the
horses, buggy, and harness were so seized, he was
employed by the plaintiff, and that it then had posses-
sion of the property described in the complaint. It will
thus be observed that his sworn declaration contradicts

the admission adverted to, and as no motion was made to amend the reply, so as to conform to the testimony given, the fact thus admitted must control until overthrown by proof of plaintiff's immediate right of possession. The ownership of personal property usually carries with it the right of possession, and in an action of replevin a general allegation of a right to the possession of the goods and chattels demanded is sufficiently maintained by evidence of ownership alone, when no special right to the possession of the property is shown by the adverse party: *Cassel* v. *Western Stage Co.* 12 Iowa, 47.

6. As against a mere intruder, a plaintiff in replevin may sustain his averment of a right to the immediate possession of the personal property in controversy by showing his prior possession thereof, and upon the production of such proof is entitled to recover as against a defendant who can show no better title, basing his remedy on the ground that the law presumes that things in the possession of a person are owned by him: Section 788, Subd. 11, B. & C. Comp.; Shinn, Replevin, § 442. Though M. Krebs was employed by the plaintiff, at the time the property was seized, the pleadings having admitted that the horses, buggy, and harness were taken from his possession, the presumption arising from such admission is, that the right of possession remained in him, on the ground that a thing once proved to exist continues as long as is usual with things of that nature: Section 788, Subd. 33, B. & C. Comp. To overcome the deduction which the law thus expressly directs to be made from particular facts, the burden was imposed upon the plaintiff to show that it was entitled to the possession of the property when the action was instituted: Cobbey, Replevin (2 ed.) § 979; Shinn, Replevin, § 441; *Wheeler* v. *Vanderveer,* 88 Hun. 233 (34 N. Y. Supp. 799) ; *Lamotte* v. *Wisner,* 51 Md. 543; *Peterson* v. *Lodwick,* 44 Neb. 771 (62 N. W. 1100). A plaintiff

in replevin must recover, if at all, on the strength of his own claim, and a failure to prove his right to the immediate possession of the property, where the illegal detention is denied, is a failure of proof upon a material point: *Bardwell* v. *Stubbert,* 17 Neb. 485 (23 N. W. 344).

The plaintiff having failed to offer such proof, no error was committed in granting the nonsuit, which judgment is affirmed.       AFFIRMED.

---

Reargued November 25, decided December 15, 1908.

## ON PETITION FOR REHEARING.

[98 Pac. 494.]

On rehearing, former opinion set aside and judgment reversed.

For appellant there was an oral argument by *Mr. John A. Carson.*

For respondent there was an oral argument by *Mr. Benjamin F. Jones.*

MR. JUSTICE MOORE delivered the opinion of the court.

At a rehearing herein, granted upon a petition therefor, it appeared that the abstract of the record, which was employed in lieu of a transcript, did not affirmatively show that, when the plaintiff's counsel announced to the court their election to proceed against Taylor and to dismiss the action as to Dickenson, the cause had not been submitted to the jury—a fact that was not observed at the prior trial. The authority to make such choice is not discussed in the former opinion, but the right to do so was tacitly admitted and the decision placed on the ground that, if an error was committed in denying the exercise of the prerogative asserted, the action of the court in this respect was without prejudice, because the testimony received was insufficient to entitle the plaintiff to a recovery.

7. The complaint in the case at bar alleged that the defendants wrongfully took and unlawfully detained the team, which averment is equivalent to an assertion, that when the action was commenced the property in question was in the possession of Taylor and Dickenson.

8. The answer alleged facts which were stated by way of justification for the seizure of the team by Taylor, who, it is averred, delivered the property to Dickenson, the keeper of a livery stable. This allegation is denied in the reply. The defendants' counsel, referring to Taylor and to what disposition of the property demanded he had made immediately after seizing it, asked M. Krebs, a witness for the plaintiff, the following question on cross-examination: "As a matter of fact, didn't he tell you where your team was?" To which Krebs replied: "He didn't tell me where the team was. He left that for somebody else to tell me." Frank Flakes, as plaintiff's witness, alluding to a conversation which occurred soon after the property was taken, testified as follows: "Mr. Mike Krebs asked Mr. Taylor if he would get his team. He asked him first if he put his team up. Mr. Taylor said, 'Yes.' He asked him if he would get it for him. He says, 'No, I won't get it.'" From this testimony it is fairly to be inferred that Taylor was not in the actual possession of the property.

9. The remedy of claim and delivery, as prescribed by our statute (Section 284, *et seq.* B. & C. Comp.) is subtantially the same as replevin, which is a mixed action, partly in *rem* and partly in *personam,* and can be brought only against the person having possession or control of the goods at the time the suit is begun: Wells, Replevin (2 ed.) § 34.

10. At Section 50, Wells, Replevin (2 ed.), the author reasserting this legal principle, and giving a reason therefor, says: "Another important distinction is that in order to sustain replevin the defendant must

have the actual or constructive possession of the goods at the time suit is commenced; in other words, he must be in a condition to deliver the property when called on by the officer, in obedience to the command of the writ." If the plaintiff's counsel had been permitted to proceed as indicated, they might thereafter have introduced evidence tending to show that, although Taylor was not in the actual control of the property when this action was commenced, he had the constructive possession thereof, notwithstanding he had delivered the team to Dickenson, who was holding it subject to his order, which agency would render Taylor liable in replevin: *Bradley* v. *Gamelle*, 7 Minn. 331 (Gil. 260). Since this fact might possibly have been established in the manner indicated, the action of the court in denying an exercise of the election mentioned will be considered.

11. A text-writer, discussing the legal principle involved, says: "If two defendants be sued jointly for a tort, and the evidence is not sufficient to hold one, there may be a discontinuance as to that one, and the trial may proceed as to the other. In such case, the joint action does not fail because the tort is not joint, if committed, but for the reason that the evidence fails to show any concert of action": Kinkead's Com. Torts, § 57. Judge Cooley, in his work on Torts (3 ed. 227) commenting upon the same doctrine, observes: "And where two or more are sued, one cannot complain because another has been dismissed out of court or been acquitted. Though two or more are sued, and a joint tort alleged, the general rule is that a recovery may be had against one only." In *Smith* v. *Day*, 39 Or. 531 (64 Pac. 812, 65 Pac. 1055), it was ruled that several joint tort-feasors might be sued jointly, when they had united by design or act to produce the injury complained of; but without a common purpose or joint act there can be no joint liability, though the injury was a general result to which

the acts of each contributed. The cases of *Dahms* v. *Sears*, 13 Or. 47 (11 Pac. 891), and *Cooper* v. *Blair*, 14 Or. 255 (12 Pac. 370), are cited, *inter alia,* in support of the rule thus announced. The first case noted appears to have been an action of trover for a conversion originating in acts constituting a trespass *vi et armis,* which are concurrent remedies: 1 Chit. Pl. *161. In deciding that case, Mr. Justice THAYER says: "The defendants in the action were charged with a joint tort, and the plaintiff, in order to maintain it, was compelled to prove a joint conversion." Further in the opinion, the writer thereof observes: "I think a jury has a right, in cases of tort, where there are several defendants, to find a verdict against a part of them and in favor of the others. * * This, however, does not allow a joint action against defendants for several trespasses. In an action of that character, the plaintiff must elect at the trial as to which of the defendants he will proceed against. If he fail to do that, and submit the case to the jury, he will be entitled to no verdict." The case of *Cooper* v. *Blair,* 14 Or. 255 (12 Pac. 370), was an action instituted against three parties defendant to recover the value of certain quantities of wheat alleged to have been converted. At the trial a judgment of nonsuit was given on the ground that a recovery could not be had because the tort complained of was not the joint act of the defendants. In affirming the judgment, Mr. Justice THAYER, in speaking of them, says: "It must be conceded, I think, that these several companies acted independently of each other in what they did in regard to the taking of the wheat. There is not the slightest trace of testimony in the case, as I can discover, that they combined or co-operated in taking away any wheat from the warehouse in question. The taking was at different times. and clearly several acts, and resulted from their several motives." In referring to the plaintiff in that

case, it is further remarked: "He had joined the three parties, the Flouring Mills Co., Henkle & Co., and Hamilton & Co., in a single action, and then attempted to introduce evidence proving a conversion by one of them only. He could only be permitted to prove an act of conversion upon the part of one of the parties, under an offer to show that the others participated in the action in some way, and unless he could make such showing he would be confined to his claim against the one party. Or he might have been permitted to show that all the parties took and carried away the wheat at different times, under an offer to show that there had been a combination entered into between them for that purpose, and, if he failed to show the common purpose, he would have had to submit to a nonsuit, unless the court permitted him to amend his complaint and proceed against one of the parties. Section 99 of the Civil Code, Section 102, B. & C. Comp. is broad enough, I think, to have allowed such an amendment; but to attempt to proceed against the respondents jointly on account of a several liability is not warranted by law, in such a case as this.

12. The rule of practice to be extracted from the extended quotations thus made is to the effect that, if the plaintiff fail to prove the commission of a joint tort as alleged, he may elect at the trial as to which of the defendants he will proceed against, and can request the court to instruct the jury, if the evidence is sufficient for that purpose, to find a verdict against a part of them and in favor of the others (*Dahms* v. *Sears*, 13 Or. 47, 65: 11 Pac. 891); or he may move for leave to amend his complaint, and, if granted, proceed against one or more of the parties (*Cooper* v. *Blair*, 14 Or. 255, 263: 12 Pac. 370). Thus in *Perkins* v. *McCullough*, 36 Or. 146 (59 Pac. 182), which was an action for an alleged conversion, a motion for a nonsuit as to one of the defendants was denied, and, judgment having been rendered as prayed

for in the complaint, it was affirmed on appeal, on the
ground that the evidence was sufficient to authorize a
submission of the cause to the jury, thereby impliedly
holding that a several judgment could have been given.
A different rule seems to prevail in Illinois, where it
was held that, a complaint alleging that an injury
resulted from the concurrent negligence of two defend-
ants, the fact must be established as averred, and no
recovery could be had unless the jury found against both
defendants: *St. Louis Co.* v. *Hopkins,* 100 Ill. App. 567;
*Wabash Ry. Co.* v. *Keeler,* 127 Ill. App. 265; *Frank
Parmelee Co.* v. *Wheelock,* 127 Ill. App. 500. A similar
conclusion was reached in Pennsylvania in *Wiest* v. *Elec-
tric Traction Co.* 200 Pa. 148 (49 Atl. 891), where Mr.
Justice POTTER, in deciding the case, said: "We are of
the opinion that, where a plaintiff, in an action of tres-
pass to recover damages for negligence, declares for a
joint tort, and the evidence shows no joint action by
defendants, a verdict and judgment against one defend-
ant for a separate tort should not be permitted." The
general rule, however, is the other way, except in actions
in which from their nature the tort cannot be joint, as
in case of verbal slander (15 Enc. Pl. & Pr. 584), and the
criterion is to the effect that, where two or more defend-
ants are charged in a complaint with the commission of
a joint tort, a recovery may be had against only one of
them (Cooley, Torts (3 ed.) 227; 11 Enc. Pl. & Pr. 852).
At common law, in actions *ex contractu,* the practice was
that if several defendants were joined, and all served
with process, or properly appeared before the court, it
was an indispensable prerequisite to the plaintiff's
recovery that he should establish a joint liability, for,
if he could not sustain the action against one of the
parties, their unity precluded the giving of a judgment
against any of them: Black, Judgments (2 ed.) § 206.
This rule, however, was not controlling in actions *ex*

*delicto,* in which, if several defendants were joined, a recovery might be had against as many and only such as were found to be guilty: Black, Judgments (2 ed.) § 207. Our statute, evidently recognizing the latter rule, contains the following enactment: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves": Section 180, B. & C. Comp. "In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, whenever a several judgment is proper, leaving the action to proceed against the others": Section 181, B. & C. Comp.

It will be seen, from an examination of the provision last quoted, that, when the action is to be continued against one or more joint defendants, the rendering of a judgment against the others is a matter within the discretion of the trial court. This liberty of judgment is not expressly authorized by the preceding section, and, in view of the ancient rule governing actions *ex delicto,* we believe the plaintiff was empowered to exercise the election proposed, in denying which an error was committed.

The conclusion announced in the former opinion is set aside, the judgment reversed, and the cause remanded for a new trial.              REVERSED.