## A. M. DILLOW & CO., Appellant, v. THE CITY OF MONTICELLO.

**Evidence:** CUSTOM AND USAGE. Proof of a custom or trade usage may be received to explain doubtful provisions of a contract, or those which may be understood in different senses, but is not admissible to contradict the plain terms of the writing.

**Same:** CONTRACT FOR DIGGING WELL: CONSTRUCTION. In the instant case plaintiff contracted with defendant for sinking a well and by the terms of the contract the defendant assumed "all risk on pipe," which expression plaintiff contends has a trade meaning, to the effect that defendant should replace all pipe unfitted or unavailable for use, and should do all things by reason of defective pipe to make it possible to proceed with the work, or be ready or prepared to pay the expense incident thereto. The contract further provided that defendant should pay a certain price per foot for the work, and that all expenses not specified should be borne by the plaintiff. *Held,* conceding that the expression "will assume all risk on the pipe," has the meaning contended for, still where a coupling dropped out of place during the work rendering it necessary to remove a section of the pipe, refusal of the city to remove the same or to compensate the plaintiff for doing so prior to the completion of the work did not amount to a breach of the contract; as the defendant, if under any obligation with respect to the matter, was not called upon to act under the terms of the contract until completion of the work.

**Trade usage:** WHEN NOT EFFECTIVE. A trade meaning will not be given effect when it will operate to defeat the plain language of a contract.

*Appeal from Jones District Court.*—HON. W. N. TREICH-LER, Judge.

FRIDAY, JANUARY 14, 1910.

THE petition alleged that the plaintiff entered into a contract with defendant to drill a twelve-inch well to be

used for city purposes on the following terms, the city being designated as party of the first part and plaintiff as party of the second part:

Party of the first part agrees to pay unto party of the second part four dollars per foot for the digging of said well, to be drilled as deep as the party of the first part shall see fit, but not in any event to exceed four hundred feet, and not less than two hundred and fifty feet. And it is expressly agreed that said well shall be drilled to admit of a twelve-inch pipe, said pipe to be furnished by party of the first part, party of the second part to furnish one twelve-inch steel forged drive shoe and all necessary twelve-inch pipe threading and twelve-inch pipe couplings. Party of the second part agrees to work continuously at the drilling of said well and complete the same within a reasonable time. It is expressly agreed that city of Monticello or party of the first part is to furnish unto the party of the second part all steam and water used in construction of said well, that it will assume all risk on twelve-inch pipe and at completion of well it will immediately pass upon the construction of said well and, if satisfactory, will pay for same according to the tenor of this contract, and further party of the second part agrees that the digging of said well shall have their personal daily supervision from commencement till completion of same, and that all expenses incurred in the digging of well not herein specified shall be borne by party of the second part.

The plaintiff alleged that the clause, "it (city) will assume all risk on twelve-inch pipes," is a trade term of a well-defined and certain meaning, and understood by and among well drillers to mean that a party who thus assumes all risk on pipe to be used in the drilling and construction of a well thereby covenants and agrees that the said party so assuming the risk shall stand ready and bound on said covenant and agreement to replace all or any pipe that may prove unfitted and unavailable for use in properly drilling and constructing said well; that the well-understood and recognized meaning and significance of the

said trade term or phrase of assuming all risk on pipe is also that the party so assuming the risk is obligated, by reason thereof, not only to be prepared to tender other pipe in its stead, as the subsequent developments may demand, but such party thereby becomes charged with the affirmative duty and obligation to do all the things and matters necessitated by any and all pipe giving way or proving to be inefficient, and thus make it possible for the drillers to proceed with the work of drilling the well, or, if said party or parties so assuming do not themselves, they must be ready and prepared to stand the expense of having the same done. It was further alleged that the parties to the contract so understood the clause, and that the city contracted accordingly.

Plaintiff commenced drilling about December 25, 1906, and continued until reaching a depth of seventy-five feet, when a section of the twelve-inch pipe furnished by the city gave away and became useless for further use in said well, in that the twelve-inch coupling on the upper end of the particular section of pipe dropped down some four or five inches out of place, thus rendering the pipe as it then stood useless and unfitted for further use in said well; and making it necessary and imperative that said section of pipe and coupling be removed and taken out of said well and repaired or entirely discarded, and new pipe and coupling substituted in its stead; that the said pipe and coupling could not be remedied and put in order with a portion of said pipe in the said wall; that the plaintiffs were unable and powerless to continue the drilling and construction and complete the said well without first having the said impaired and defective pipe and coupling removed and repaired and made sound or have other pipe and coupling furnished them in its place, and so notified the city of Monticello and its duly acting and qualified officers; that the plaintiffs notified said defendant city to remove said defective and useless pipe and coupling from said well in

order that they could continue the drilling and construction of said well according to the terms of said written contract, or to agree to stand the expense of having the same removed and taken out.    The city refused to remove the pipe and coupling or compensate plaintiff for so doing, and, because of its alleged abandonment of the contract, plaintiff was unable to perform the same, to their damage in a large amount.

To the petition with allegations as stated the defendant demurred (1) for that plaintiff should have removed the pipe and demanded as the measure of its damages the expense of such removal; and (2), even if the clause had the trade meaning alleged, it should not be given effect in the face of an express agreement that plaintiff would be at such expense.    The demurrer was sustained, and, as plaintiff elected to stand on the ruling the petition was dismissed.    The plaintiff appeals.

*Jamison, Smyth & Gorman,* for appellant.

*J. J. Locher* and *Herrick, Cash & Rhinehart,* for appellee.

LADD, J.—It seems that, after the plaintiff had sunk the twelve-inch pipe in the well seventy-five feet, a coupling slipped down on one section of the pipe four or five inches, rendering the particular section of pipe useless, and that, before the work could be continued, this pipe must have been removed.    The sole issue is whether under the terms of the contract as pleaded defendant was required to remove or cause to be removed this pipe so as to enable plaintiff to proceed with the work.    According to the petition, the clause in the contract, "it [the city] will assume all risk on the twelve-inch pipe," had a trade meaning that the party so assuming is to "replace all or any pipe that may prove unfitted and unavailable for use in properly

drilling and constructing said well" and obligated said party "with the affirmative duty and obligation to do all the things and matters necessitated by any and all pipe giving way or proving to be inefficient and thus make it possible for the drillers to proceed with the work of drilling the well, or if said party or parties, so assuming, do not themselves, they must be ready and prepared to stand the expense of having the same done." Because the petition so alleged and the demurrer admits the allegations well pleaded, the clause will be assumed to have the meaning stated. The ruling on the demurrer was that, conceding this, no cause of action was alleged, inasmuch as there was no breach of contract on the defendant's part, and plaintiff admitted that the well had not been completed.

I.    The signification or import of words or expressions in any trade or vocation may be so fixed by usage that, in order to arrive at the true intent of the parties in entering a contract, resort must be had to proof of the technical meaning of such words or expressions. In speaking of the usages of trade, Greenleaf says: "Their true office is to interpret the otherwise indeterminate intention of the parties, and to ascertain the nature of their contracts arising, not from express stipulation, but from mere implication and presumptions and acts of doubtful and equivocal character, and to fix and explain the meaning of words and expressions of doubtful and various senses." 2 Greenl. Ev., section 251. Further on he says, quoting from Lord Lyndhurst: "But, though usage may be admissible to explain what is doubtful, it is not admissible to contradict what is plain." Id., section 292. In *Barnard v. Kellog,* 10 Wall. 383 (19 L. Ed. 987), the court, speaking through Mr. Justice Davis, thus stated the rule: "The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, whether written or in parol, which could not be done without the

1. EVIDENCE: custom and usage.

aid of extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation, on the theory that the parties knew of its existence and contracted with reference to it. It is often employed to explain words or phrases in a contract of doubtful signification or which may be understood in different senses, according to the subject-matter to which they are applied. But, if it be inconsistent with the contract or expressly or by necessary implication contradicts it, it can not be received in evidence to affect it." See, also, *McCarthy v. McArthur*, 69 Ark. 313 (63 S. W. 56).

II. No claim is made that defendant did not furnish plaintiff pipe to replace that in the well. The sole controversy relates to the removal of a section of pipe from the

**2. SAME: contract for digging well: construction.** well because of the coupling having "dropped down some four or five inches out of place, thus rendering the pipe as it then stood useless and unfitted for further use in said well, and making it necessary and imperative that said section of pipe and coupling be removed and taken out of said well and repaired or discarded, and new pipe and coupling substituted in its stead." The plaintiff contends that the provision of the contract that the city "will assume all risk on the twelve-inch pipe," in well diggers' parlance, among other things, means that the city was "to do all the things and matters necessitated by any and all pipe giving way or proving to be insufficient, and thus make it possible for the drillers to proceed with the work of drilling the well, or, if said party or parties so assuming do not themselves, they must be ready and prepared to stand the expense of having the same done." Conceding this to be true, the city had the option either to remove the pipe or "be ready and prepared to stand the expense of having the same done." In what way a city must have been "ready and prepared" is not clear, and is not alleged. Surely it was not meant that it should exhibit the necessary money to the contractor.

It could only pay such expense upon presentation of bills therefor to the council, and upon allowance receive proper warrants therefor.   All that could have been meant was that the city must either remove the pipe or bear the expense of plaintiff doing so.   Having so contracted, there was no occasion for farther action on its part save upon the presentation of bills for such expenses, and the plaintiff was in no way relieved from its obligation to comply with the terms of the agreement by the circumstance of the city officials having put a different interpretation thereon by declaring that the city was under no obligation to pay such expenses.   It did not owe plaintiff the duty of entering into a new contract construing that already adopted, but had the right to stand on the agreement as written, and, as in any event it was not bound to pay the expense of removing the section of pipe until plaintiff had taken it from the well, there was no breach of which plaintiff can complain.

But there is another reason for saying that no cause of action was stated.   Immediately after the clause in controversy is a provision that the city "at the completion of the well will immediately pass upon the construction of said well, and, if satisfactory, will pay for the same according to the tenor of this contract."   No argument is required to show that the removal of the pipe was involved in and essential to the digging of the well as proposed, and, conceding that defendant must have borne the expense of such removal, here is an express provision fixing the time for the payment when the well was completed.   Until then, the expense for having done so, according to the tenor of the contract, was not due.

Again, the price for digging the well was fixed in the contract at $4 per foot.   This is the only expense to the city specified.   If the clause be accorded the meaning alleged, the expense of removal was to be implied from its use, and was not expressly stated in the instrument.   But

the last clause is a stipulation "that all expense incurred
in the digging of well not herein specified

3. TRADE USAGE:
when not
effective.

shall be borne by party of the second."
"Specify," according to the lexicographers,
means to mention specifically or explicitly, to state in full
and explicit terms or explicitly and in detail, name express-
ly, distinctly and particularly. In *Stewart v. Jaques,* 77
Ga. 365 (3 S. E. 283, 4 Am. St. Rep. 86), it is said to
mean "to point out, to particularize, to designate by words
one thing from another." As appears from all the authori-
ties, a trade meaning can not be given effect when this will
defeat the plain language of the agreement. Here the con-
tractor has expressly promised to bear all expenses not speci-
fied, and, as none save $4 per foot for digging the well was
specified in the instrument, he was entitled to no other.

The petition alleges no breach of any obligation on
the part of the city, and for this reason the demurrer was
rightly sustained.—*Affirmed.*