Argued June 30, decided July 1, 1913.

## SULLIVAN *v.* WAKEFIELD.

(133 Pac. 641.)

**Trial—Requested Instructions—Given Instructions.**

1. Where the charges given covered all the questions that were for the consideration of the jury, the refusal of requested charges was proper.

**New Trial—Grounds—Insufficiency of Evidence—Constitutional Law.**

2. Article VII, Section 3, of the Constitution, as amended (see Laws 1911, p. 7), provides that in actions at law, where the value in controversy exceeds $20, no fact tried by the jury shall be otherwise reexamined by any court, unless it can affirmatively say that there was no evidence to support it. In a servant's action for injuries, where the case was fairly tried, and there was legal testimony to support the verdict for defendants, under instructions requiring the jury to believe either that defendants were without fault, or that deceased was guilty of contributory negligence, a motion for a new trial on the ground of the insufficiency of the evidence to justify the verdict, and that it was against law and for errors of law occurring at the trial and excepted to by plaintiff, was sustained by an order stating that the court "sustains the said motion." *Held,* that as there was legal evidence to support the verdict, and as the court did not affirmatively find that there was *no* evidence to support it, it was error to grant a new trial.

**New Trial—Grounds for Review—Motion for a New Trial.**

3.   Under Article VII, Section 3, of the Constitution, as amended (see Laws 1911, p. 7), providing that no fact tried by a jury shall be re-examined by the court, unless it can affirmatively say that there was no evidence to support it, a motion for a new trial on the ground of insufficient evidence should allege that there was *no* evidence to support the verdict.

**Appeal and Error—New Trial—Review—Verdict.**

4.   Under Article VII, Section 3, of the Constitution as amended (see Laws 1911, p. 7), providing that no fact tried by a jury shall be re-examined by any court, unless it can affirmatively say that there was no evidence to support it, a verdict to be protected from re-examination must be one rendered in a court having jurisdiction of the parties and the subject matter, on a trial where there were no reversible errors of law, and where there was *some* legal evidence to support the verdict.

**Appeal and Error—Review—Verdict—"Trial by Jury."**

5.   Under Article VII, Section 3, of the Constitution as amended (see Laws 1911, p. 7), providing that in actions at law the right to trial by jury shall be preserved, and no fact tried by the jury shall be re-examined by any court, unless it can affirmatively say that there was no evidence to support the verdict, the term "trial by jury" means a verdict reached under the forms of law prescribed for a jury trial, so that the provision does not preclude the Supreme Court from reversing a judgment based on a verdict returned after the *erroneous exclusion of material evidence.*

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE RAMSEY.

This is an action by Annie P. Sullivan, administratrix of the estate of Wm. H. Sullivan, deceased, against Robert Wakefield and Wm. Jacobsen, partners in business under the firm name of Wakefield & Jacobsen, to recover from the defendants and appellants $7,500, as alleged damages on account of the death of Wm. H. Sullivan, who was killed by an accident on the 7th day of April, 1909, while working in an excavation in East Portland.   Bingham & McClelland had the contract for excavating a basement, putting in cellar walls, and for erecting a building on a block in Portland on the east side of the river.   It was necessary in putting in the basement, on account of the character of the ground, to have piles driven

into the ground. Bingham & McClelland made a sub-contract with Wakefield & Jacobsen, the defendants, to drive the piling.

The pile-driving equipment was the usual equipment for that purpose, but in driving the piles they used a "follower," which was a round piece of timber with the bark pealed off, about 18 feet long and about 14 inches in diameter, with an iron band at each end. When a pile was driven to the ground, one end of this "follower" was placed on the pile, and the hammer operated on the top end of the "follower," the object being to drive the pile below the surface of the ground; but the "follower" was not used until the pile had been driven to the surface of the ground. When the "follower" was not in use, it was set to one side where it could be easily picked up by machinery and swung into position to be used.

The basement had been excavated, and the depth of the basement was about 15 feet below the sidewalk, which ran along the side of the excavation. The basement had been excavated by Bingham & McClelland, before the defendants began driving piles. At the time the accident occurred, the pile-driver was in action, but the "follower" was not then being used, and it was standing about two feet from the pile-driver, with its upper end leaning against the edge of said sidewalk, and the top of the "follower" extending two or three feet above the sidewalk, and the lower end standing in the basement in a leaning position about six feet out of perpendicular.

The deceased, and Mr. Martin L. Buley, and another man, about three minutes before the accident occurred, by orders of Mr. Bingham, who, with his partner, had the original contract for the whole works, went into the excavation to brace up the sidewalk, and were working near the "follower" putting in a brace under the sidewalk when the "follower" fell, striking

Mr. Sullivan on the head and killing him. When the "follower" began to fall, an employee of the appellant saw it, and shouted, "Look out!" Mr. Sullivan, Mr. Buley, and the other man, who went into the basement to brace up the sidewalk, were not in the employ of the defendants. They were employed by Bingham & McClelland, and they were there by orders of Bingham without consulting defendants and without their knowledge.

The evidence shows that the pile-driving crew were busy at work when the accident occurred, and that the working of the pile-driver produced only slight vibrations. The defendants had nothing to do with the sidewalk or with bracing it up. The evidence shows that when they stood the "follower" up in a perpendicular position, they tied it, but when they leaned it up against the sidewalk, with the lower end out of perpendicular, as it was when the accident occurred, they did not tie it.

The trial resulted in a verdict and judgment for the defendants. The plaintiff moved for a new trial, for the alleged reasons that the evidence was insufficient to justify the verdict, and that the same was against law and for errors of law occurring at the trial and excepted to by plaintiff at the time of the trial. The defendants appealed, and claim that the court below erred in sustaining said motion, and setting aside said verdict and judgment, and in granting a new trial.

REVERSED.

For appellants there was a brief, with oral arguments by *Mr. Arthur Langguth* and *Mr. Cicero M. Idleman.*

For respondent there was a brief, with oral arguments by *Messrs. Wilbur, Spencer & Dibble.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The question for decision on this appeal is, whether or not the court below erred in setting aside the verdict and judgment, and in granting a new trial.

We have examined the record, and find that a number of exceptions were taken by the respondent to rulings of the court on the trial, but that there was no error committed by the court in the rulings excepted to. The charge of the court is lengthy, but it was not unfavorable to the respondent, and she did not except to any part thereof.

1. The respondent excepted to the refusal of the court to give some charges that were requested by her counsel, but the record fails to show what these charges were, and the charges that were given by the court cover all the questions that were for the consideration of the jury.

The trial appears to have been fair in every way. We find no error of law occurring at the trial and excepted to by the respondent.

The only other question for decision is, Was the evidence in the case insufficient to justify or support the verdict, or was the same against the law? It was a general verdict in the usual form in favor of the defendants, which the jury had the right to find under the law and the facts of the case, *if* they believed from the evidence that the appellants were not guilty of negligence which was the approximate cause of the injury, or if they believed that the appellants were guilty of negligence, but believed that the deceased was also guilty of negligence contributing to his death.

The evidence was sufficient to be submitted to the jury, but the case was not a strong one for the plaintiff. It is not necessary to discuss the evidence at length, but we will refer to some points in it. It

should be noticed, in the first place, that the relationship of master and servant did not exist between the appellant and the deceased. The deceased was working for Bingham & McClelland, and not for the appellants. He went into the excavation where the appellants were driving piles, under orders of Mr. Bingham, and was working under his orders when the accident occurred. There was no direct evidence that the appellants knew that the decedent was in the excavation. One of their employees saw him there a moment before the accident occurred, and saw the "follower" when it began to fall, and shouted, "Look out!" The evidence shows that the pile-driving crew numbered eight persons, and that there were three platforms on the pile-driver on which men stood and worked, and that, when the accident occurred, some of the eight men were on those platforms and others were on the ground, and all were at work.

The pile-driver was 45 feet high. The "follower," or piece of timber that fell on the deceased, was standing up against the sidewalk, which was about 15 feet above the floor of the excavation. The motion of the pile-driver, when in action, produced a slight vibration, but evidently this vibration, or the bracing up of the sidewalk by the deceased and those working with him, caused the "follower" to fall. The deceased was a carpenter, and there was nothing to prevent his seeing the "follower" leaning against the sidewalk near him, and he could have felt the vibrations caused by the operation of the pile-driver. He went there by orders of Mr. Bingham, his employer, who knew the situation, but gave him no warning as to danger. The appellants did not know he was there, and they were not instrumental in causing him to be there. The accident was a sad one, but it is difficult, if not impossible, to form a definite opinion as to who was at fault for the deceased's death. The jury, under the

lucid instructions of the trial court, found that the appellants were not guilty of negligence, or, if they were guilty of negligence, that the deceased was guilty of contributory negligence.

2. The verdict is a general one, but under the clear and explicit instructions of the court, they must have believed either that the appellants were without fault, or that the decedent was guilty of negligence contributing to his death, and hence that the appellants were entitled to a verdict.

The case was fairly tried, there were no errors of law on trial, and there was legal testimony sufficient to support the verdict. Section 3 of Article VII of the Constitution contains the following provision: "In actions at law, when the value in controversy shall exceed $20, the right of trial by jury shall be preserved, and no facts tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there was *no* evidence to support the verdict": See Laws of 1911, p. 7. The facts in issue in this case were tried by a jury in the court below, and the trial was, in all respects, fair and legal, and hence, under the above provision of the Constitution, the court below could not legally set aside the verdict and judgment for the appellants, and grant a new trial of the facts in issue, unless that court could properly and affirmatively say that there was *no* evidence to support the verdict, and the court below did not "say affirmatively" that there was *no* evidence to support the verdict. The motion for a new trial alleged two grounds for setting aside the verdict—the first ground being an allegation of "the insufficiency of evidence to justify the verdict, and that the same is against law," and the second ground being "errors in law occurring at the trial and excepted to by plaintiff at the trial." The order of the court granting a new trial states that the court "sustains the said mo-

tion,'' but does not state on what grounds it sustained it.

Under this section of the Constitution, a court cannot legally set aside the findings of the jury, where there has been no error of law, without affirmatively finding that there was *no* evidence to support the verdict. The adoption of this section of the Constitution changed the law to some extent, and it is the duty of the courts to recognize this fact, and to give effect to it.

3. The motion for a new trial did not allege that there was *no* evidence to *support* the verdict. To make the practice harmonize with this section of the Constitution, a motion for a new trial on the ground of insufficient evidence should allege that there is *no* evidence to support the verdict.

4. A verdict to be protected from re-examination, under the section of the Constitution cited *supra,* must be`one rendered in a court having jurisdiction of the parties and of the subject matter, on a trial where there were no reversible errors of law committed by the court, and where there was *some* legal evidence to support the verdict.

5. Mr. BURNETT, discussing the effect of this section of the Constitution in *Forrest* v. *Portland Ry., L. & P. Co.,* 64 Or. 240, (120 Pac. 1050), says:

''Finally, it is urged that as a verdict was rendered it cannot be disturbed, and for this the plaintiff relies upon Section 3 of Article VII of the Constitution of this state as amended at the general election of November, 1910: 'In actions at law * * the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict.' * * The Constitution, as so amended, does not purport or intend to change the signification of the term 'trial by jury,' as it has been known ever since the birth of constitu-

tional government in this country. On the contrary, it expressly preserves that time-honored institution. A verdict that is immune from re-examination except for an entire want of evidence is not any and every decision that may be reached by a body of 12 men who happen to sit in a jury-box and hear the testimony in the presence of a court, but it means one reached under the forms of law as prescribed for a jury trial within the meaning of the Constitution from the beginning. * * An invulnerable verdict must be a conclusion of fact by a jury regularly impaneled, as the result of a trial in which the rights of all parties, in respect to the admission or exclusion of testimony, have been observed in all material particulars under proper instructions of the court as to the law. By so much as the elements of this standard were wanting, namely, by the exclusion of competent testimony offered by the defendant, the procedure culminating in the decision of the jury in this case fell short of the trial by jury which the Constitution says shall be preserved.''

In *State* v. *Rader*, 62 Or. 37 (124 Pac. 195), Justice McBRIDE, in construing this section, said:

"But for the jury to find the fact, the court must see that they receive only legal evidence, and no good finding of fact can ever be predicated upon illegal evidence."

In this case the trial in the court below was legal and regular, and there was legal evidence to support the verdict found by the jury, and this verdict should stand. We find that the court below erred in setting aside the verdict and the judgment based thereon, and in granting a new trial.

The judgment of the court below is reversed, and the cause is remanded to the court below, with instructions to enter in the journal of that court the mandate of this court, and to enter a proper judgment thereon for costs and disbursements of this court,

and to enter in the journal of said court a proper judgment in favor of the defendants and against the plaintiff for costs and disbursements of the court below, based upon and in accordance with the verdict of the jury, rendered in the court below in favor of the defendants.

REVERSED, WITH DIRECTIONS.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.