Argued January 27; affirmed February 24, 1943

# GORDAN *v.* BRIODY ET AL.

(134 P. (2d) 431)

Before BAILEY, Chief Justice, and KELLY, LUSK, BRAND and HAY, Associate Justices.

*George L. Rauch,* of Portland, for appellants.
*Oren R. Richards,* of Portland, for respondent.

HAY, J.  On and prior to May 18, 1938, the defendants Briody and Muir were engaged in business as co-partners in the city of Portland under the assumed business name of Industrial Chrome Plating Company. Their business was the chrome-plating of heavy machinery, such as rollers used in paper mills. On that day, Briody, assuming to act for the partnership, made an assignment for the benefit of its creditors in favor of the defendant Schulein, who had theretofore been one of its employees.

There was about that time another concern of the same name in Portland, engaged in the same business. This was a Wisconsin corporation. On March 14, 1938, at a constable's sale of certain property of said corporation, under an execution issued against it, the plaintiff, I. Gordan, displaying mercantile talents of a high order, purchased for $275 certain electrical equipment which he says is of the reasonable market value of $4,000. The defendants Muir, Schulein and Briody were present at the sale and bid against the plaintiff for the same property. Apparently, they or some of them were anxious to acquire the property, and after the sale Muir had a talk with plaintiff, during which it was agreed that plaintiff should store his property at Muir and Briody's premises, without storage charges, and that he could "either get it himself or make a deal with them for it."

The principal item of the property so purchased and stored by plaintiff was a large electrical generator. This generator has been variously described in the proceedings. There seems to be no question about the fact that the property was delivered by plaintiff to the Muir and Briody premises. Muir did not at any time have anything to do with the operation of the business; he merely furnished the necessary capital. A dispute arose between him and his partner, in which the latter claimed that Muir had not put into the business as much money as he had agreed to, which finally led either to Muir's expulsion from the partnership or to his withdrawal therefrom, whichever the fact may have been. In due time, Gordan presented himself at the Muir and Briody place of business and demanded delivery of his property. He made this demand of Muir, of Briody and of Schulein. At this point in the narrative, the defendant Burkitt makes his appearance. Briody had brought a suit in the circuit court for Multnomah county against Muir for dissolution of their partnership, and the court had appointed a receiver of the partnership assets. At first Schulein was so appointed, but afterwards Walter W. R. May was made permanent receiver. It seems that Mr. May was negotiating with the defendant Burkitt to sell such assets to him, and that, before such sale was consummated, the plaintiff notified Mr. Burkitt of his ownership of the property involved here, and in effect warned him not to purchase it. Burkitt, however, proceeded to make the purchase.

Failing to secure possession of his property, plaintiff commenced this action in claim and delivery in the district court for Multnomah county against the defendants Briody and Muir, copartners as aforesaid, and the defendant Schulein, under the name of John Doe.

Schulein and Briody filed their answer, consisting of a general denial with a counterclaim for $3,000 general and $1,250 special damages. This counterclaim being in excess of the jurisdiction of the district court, the case was transferred to the circuit court. Plaintiff filed in the circuit court a motion to be permitted to file an amended complaint. In support of his motion, he filed his affidavit setting forth, inter alia, that Briody had commenced action in the circuit court for Multnomah county against Muir for dissolution of their partnership; that Walter W. R. May had been appointed receiver; that May, as such receiver, took possession of the property involved in this action and, without the consent of the plaintiff, sold it to Harold Burkitt; and that Burkitt had transferred it to a corporation known as Industrial Chrome Plating Co.; that such corporation, Burkitt and May then had the property and were exercising ownership, control and possession thereof, and were proper and indispensable parties to the action. The court allowed the motion to the extent of permitting Industrial Chrome Plating Co., a corporation, and Burkitt to be made defendants, and permitted plaintiff to file an amended complaint. He duly filed his amended complaint against Briody and Muir, doing business as Industrial Chrome Plating Co., Jos. Schulein, Harold Burkitt and Industrial Chrome Plating Co., a corporation. (The latter was an Oregon corporation which had been organized by Burkitt.)

In the original complaint, as filed in the district court, the property involved was described as follows:

"One 2500 horse-power generator; one motor; two switches; eight switch boxes; about seventy feet of flat copper lead cable; and one switchboard with ammeters and other equipment attached thereto, * * * of the actual value of $995.00."

In the amended complaint, however, the property is described thus:

"One 2500 amp., 600 RPM, Hanson Varnurukle Generator, unit serial No. 349983, with 30 HP. WH motor, attached and mounted on steel skids. Value $2500.00.

"One 100 amp. generator with motor complete. Value, $75.00.

"One complete switchboard with ammeter installed including one 300-watt ammeter and one 100 ammeter.

"Two switches. Value $ . . .

"Four switch boxes. ·

"One lot of flat copper lead cable (about 80 feet).

"Other miscellaneous equipment attached and belonging to the generator above described. Value, $75.00."

The defendants Briody, Schulein, Burkitt and Industrial Chrome Plating Co., a corporation, appearing together, answered the amended complaint by a general denial of the allegations thereof and, for a counterclaim, demanded delivery to the defendant Industrial Chrome Plating Co., a corporation, of a low voltage generator which they alleged had been taken by plaintiff, by means of the present action, from the possession of the defendant Schulein, as assignee, or the value thereof, with damages for the use thereof.

The case was tried to the court and a jury, and the jury found its verdict in favor of the plaintiff and against the defendants Briody, Schulein, Burkitt and Industrial Chrome Plating Co., a corporation, for the return of the property or for the value thereof, fixed at $1,500, and for $500 for the wrongful withholding thereof. Judgment followed and the defendants have appealed.

■ The defendants-appellants assign error in the action of the trial court in sustaining objections to the introduction of evidence by the defendants tending to establish their alleged counterclaim. There was no error in this action. The counterclaim had reference not to the property or any part of it for which this action was instituted, but to another piece of property altogether, a generator in which the plaintiff had no interest or right of possession. This generator was taken from the defendants, or some of them, not by plaintiff but by the constable, and the evidence indicates that the constable acted upon his own responsibility in so doing. Under the circumstances, while the facts might have given rise to a cause of action by the defendants against the constable, they did not comprise a cause of action or of counterclaim against the plaintiff in this case, and the trial judge was correct in so ruling. *McCargar v. Wiley,* 112 Or. 215; 229 P. 665.

The defendants argue that the filing of their counterclaim in this case was their only opportunity to recover damages for the unlawful taking of their property. They cite a number of authorities for this contention, but none of those support their point of view. All refer to counterclaims for the return of the very property for which the action was brought, and which, by virtue of the action, plaintiff had caused to be taken from defendant. Evidently, the claim of the defendants that this is their only opportunity to recover damages is not true, as the constable, if he did in fact take their property, could be held liable as a trespasser.

It is next contended that the court erred in permitting the plaintiff to amend his complaint in order to make Industrial Chrome Plating Co., a corporation, and Harold Burkitt, parties defendant.

■ It is true that the action of claim and delivery must be brought against the person having possession or control of the goods at the time the action was instituted. *Ylvich v. Kalafate,* 162 Or. 365, 371, 92 P. (2d) 178. We do not believe, however, that plaintiff is precluded from joining other defendants as joint tortfeasors.

"The rule of practice * * * is to the effect that, if the plaintiff fail to prove the commission of a joint tort as alleged, he may elect at the trial as to which of the defendants he will proceed against, and can request the court to instruct the jury, if the evidence is sufficient for that purpose, to find a verdict against a part of them and in favor of the others (Dahms v. Sears, 13 Or. 47, 65; 11 P. 891); or he may move for leave to amend his complaint, and, if granted, proceed against one or more of the parties (Cooper v. Blair, 14 Or. 255, 263; 12 P. 370) * * * ." *Krebs Hop Co. v. Taylor,* 52 Or. 627, 638, 97 P. 44, 98 P. 494.

The property was delivered to the premises of the defendants Muir and Briody, and apparently has remained there ever since, through various reputed changes of ownership. Plaintiff was denied access to the premises. He brought his action in the first place against Muir, Briody and Schulein, and, in his amended complaint, brought in Burkitt and Industrial Chrome Plating Co., charging them all with being in possession of the property.

"* * * One who participated in a wrongful taking, although not in possession of, and making no claim to, any of the property, is a proper party defendant, and it has also been held that, where one person wrongfully takes property and turns it over to another who wrongfully retains it, they may be sued jointly * * * ". 54 C. J., Replevin, section 92.

"Where, as in this case, property has actually been in appellant's possession, and has been wrongfully transferred by him without respondent's knowledge before the commencement of an action for the recovery of its possession, the rule that replevin will not lie against one not in possession at the time of the commencement of the action will not obtain." *Andrews v. Hoeslich*, 47 Wash. 220, 222, 91 P. 772, 125 Am. St. Rep. 896, 14 Ann. Cas. 1118, 18 L. R. A. (N. S.) 1265; cited with approval in *Reed v. Mills*, 78 Or. 558, 563, 154 P. 113.

■ While it has been held that the action of claim and delivery is substantially the ancient remedy of replevin *(Freeman v. Trummer,* 50 Or. 287, 91 P. 1077), nevertheless it must not be forgotten that it is more than a mere action for the possession of personal property; it is also an action for damages. Hence, it may well be proper to join in the action as joint tort-feasors all persons who had anything to do with the unlawful taking or withholding of the property, and we can see no impropriety, where the evidence warrants it, in a verdict against all the defendants for a return of the property or for damages, even if all of the defendants do not have actual possession of the property at the time. *Swartz, Trustee, v. Stein,* 78 Pa. Super. 515, 519.

"The defendant next insists that the verdict was illegal and void, '(1) in that it is in the form of a verdict for the possession of personal property only; (2) that it is not in the alternative in the wording required by law in cases of claim and delivery; (3) in that it is a general verdict against the defendants jointly; (4) that it was against Tuten for the possession of the property, when he was not in possession, according to the testimony, and according to pleadings; (5) that it treats the real estate in dispute as personal property.' * * * In this case the verdict was for the entire property claimed, which involved both land and machinery. We can

see no ground for claiming the verdict was not in the alternative. The verdict for possession, it is true, was not necessary as to Tuten, because he was already out of possession, having turned over the property to Langford. But, according to the evidence offered by the plaintiff, Tuten and Langford were joint tort-feasors; Tuten having unlawfully taken the property, and Langford having, in pursuance of a purchase from Tuten with full notice, continued the wrong by unlawfully retaining it. They were therefore jointly liable for the resulting injury to the plaintiff. Matthews v. Railway, 67 S. C. 514, 46 S. E. 335, 65 L. R. A. 286.'' *Murdouch v. Tuten et al.*, 76 S. C. 502, 57 S. E. 547, 548.

██ The appellants say that the amended complaint was an abandonment of the original cause of action and the substitution of a new one. We think not. Amendments should be permitted in replevin cases with as much liberality as in other cases. 54 C. J., Replevin, section 203. The effect of the amendment in this case was to describe the property with greater particularity than in the original complaint. A generator, switches and other electrical equipment are described in both the original and amended complaints, and, under the circumstances, the correction of the description did not have the effect of substituting a new cause of action. *Nollkamper v. Wyatt,* 27 Neb. 565, 43 N. W. 357.

██ The description of the property which plaintiff purchased at the constable's sale corresponds with reasonable accuracy to the description appearing in his amended complaint. It is true that the latter does not accurately correspond to the description in the original complaint which was filed in the district court, but in each case a generator and electrical equipment are described. We think that the defendants knew at all times just what property they were charged with having

wrongfully withheld from the plaintiff. The plaintiff testified that Muir, Schulein and Briody were all at the constable's sale and bid against him. Muir and Briody were desirous of obtaining the property but apparently were short of money. Before bringing his action, the plaintiff made demand for his property of Muir, Briody, Schulein and Burkitt, and they all refused. The evidence indicates that he was told to stay out of the plant "if he knew what was good for him." He notified Burkitt before the latter undertook to purchase the property from Receiver May. In answer to a question as to whether he knew the generator was still in the possession of any of the defendants, he testified that, from what he saw when he was at the plant, it looked as if they were operating the generator. The jury may very well have come to the conclusion from the evidence that the defendants were deliberately attempting to confuse the plaintiff in order to make it difficult for him to ascertain where the property was or who had it. Certain it is that he delivered it to the partnership which was called Industrial Chrome Plating Co., and which consisted of the defendants Muir and Briody. Muir apparently abandoned his interest in the partnership shortly afterwards. We do not think that the plaintiff should be required to go further than he did with proof as to the delivery to and possession of the property by the defendants. In this connection, we quote from a succinct statement by the trial judge when passing upon a motion by the defendants for a nonsuit:

"THE COURT: Well, the plaintiff testified that he purchased at this constable's sale one 2500 ampere 600 revolution per minute Hanson Van Winkle generator unit, and he gave the serial number of it, 30 horse power; also he described these

other things as set forth in his complaint and he says that is the machinery, or whatever it is, that he turned over to Briody and Muir. And he also testified that he saw this particular personal property in the possession of the defendants at their place of business, and he says it is there now. That is his testimony.

"MR. RAUCH: I may be wrong about that testimony."

Incidentally, while the generator is described as a "Hanson Varnurukle" generator, most of the witnesses referred to it as a "Hanson Van Winkle". Undoubtedly, they meant to describe the same generator, under either variation of the name.

■ Defendants contend further that the evidence of damages was insufficient. As to this, the plaintiff's witness Greenberg testified that he had had considerable experience with respect to electrical equipment. He testified that the equipment involved here is "highly specialized", and that there were not over two or three plants in the city of Portland using it. However, he testified further that he had had over thirty-five years' experience in dealing in machinery, that he bought and sold electrical equipment, motors and all kinds of machinery, and that he did not rent such machinery very often but did occasionally. The verdict of the jury on the subject of damages was well within this witness's testimony as to the value of the property and of the use thereof. We think that he was sufficiently qualified.

■ There was no error in the trial court's refusal to direct a verdict for the defendants. The reasons assigned in support of the motion have been discussed in the preceding portions of this opinion.

■ Appellants make the objection that judgment in this case was given against the defendant Schulein

personally rather than against him as assignee. They say that he was acting in good faith as assignee for the benefit of the creditors of Briody and Muir, as copartners, and that it is improper to hold him to personal liability under those circumstances. Mr. Muir, one of the partners, refused to join in the assignment for the benefit of creditors, but the evidence indicates that at about that time he repudiated the partnership. The assignment, executed by the remaining partner, was valid. 4 Am. Jur., Assignments for Benefit of Creditors, section 14. Mr. Schulein, however, was sued as an individual and answered as an individual. He did not admit having possession of the property and attempt to avoid liability by pleading any special circumstances, such as ownership by his assignor; on the contrary, he simply denied generally the allegations of the amended complaint. The evidence is that, before the action was brought, plaintiff demanded his property of Schulein, and was refused. This refusal was a conversion of plaintiff's property. *Gregory v. Oregon Fruit Juice Co.*, 84 Or. 199, 164 P. 728. Schulein appears to have been an active protagonist throughout the transaction. There is nothing in the pleadings tending to exculpate him from personal liability, or in the evidence to excuse him from such.

■ Finally, appellants assert that there is no evidence showing how long Schulein had possession of plaintiff's property, and hence nothing upon which the jury, as against him, could admeasure the damages for loss of use. The defendants were sued as joint tort-feasors, however, and apportionment of damages between them would be neither necessary nor proper. 8 R. C. L., Damages, section 209.

The judgment is affirmed.