Argued September 8, reversed with instructions November 14,
rehearing granted December 9, 1952, argued on rehearing
January 14, former opinion withdrawn and order
granting new trial affirmed March 25, 1953

## BRAZIL *v.* DUPREE ET AL.

250 P. 2d 89
254 P. 2d 1041

*Norman B. Kobin,* of Portland, argued the cause for appellant. With him on the brief was David Weinstein, of Portland.

*Arthur H. Lewis,* of Portland, argued the cause and filed a brief for respondent, E. W. LeBeck.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

LATOURETTE, J.

This is an appeal by plaintiff from an order granting a new trial to defendants after verdict in favor of plaintiff in a claim and delivery action to recover possession of two frame houses which were detached from the real property, and also for damages for their wrongful detention.

Plaintiff alleged that he was the owner of and entitled to the immediate and exclusive possession of the houses, that the defendants were in possession of the same in Multnomah county and wrongfully and unlawfully withheld possession thereof from the plaintiff; that the reasonable value of the said houses was $2,000, and that he was damaged in the sum of $2,500 for the wrongful withholding of the same. Defendants in their separate answers pleaded general denials. On trial the jury brought in a verdict against the defendants jointly in the sum of $3,750.

To understand the legal questions involved, we will briefly narrate the facts in the case. Columbia Food Company (hereinafter termed "food company"), owner of the houses sought to be replevined, desired to have them removed from its real property and entered into a verbal contract on or about September 19, 1949, with the defendants, Dupree and Stark, copartners, dba Spokane Wrecking Company, whereby they agreed to wreck and remove the houses not later than September 25, 1949, it being understood that for such services they should have and retain said houses for their own use and benefit. On said September 19,

the food company was informed by Dupree and Stark that a written authorization would be required to obtain a wrecking permit from the the city of Portland, whereupon the following document was written and signed by the food company:

"Spokane Wrecking Co.

"Gentlemen:

"This will authorize you to wreck and remove the two houses and garages at 2025 and 2037 S. E. Insley, Block 5, Alton Park. We agree not to charge you for the houses and materials, nor are you to charge us for your services.

"Yours truly,
W. T. Triplett, President
Columbia Food Co."

The following endorsement appeared on the reverse side of this letter:

"Sept. 19, 1949.

"Sold the 2 houses and garages to LeBeck & Son to be moved off premises in 30 days from date.

"Robert Dupree,
Owner."

On September 22, 1949, Mr. Triplett, president of the food company, noticed that nothing had been done to wreck and remove the houses and notified Dupree and Stark that they had until Sunday night, September 25, 1949, to comply with the agreement, and that if such agreement was not complied with by that date, the contract would terminate. The food company had no knowledge that the contract had been assigned to LeBeck.

Neither Dupree and Stark nor LeBeck had removed the houses from the premises at the expiration date, to-wit: September 25, 1949, so that on September 26

the food company executed a bill of sale to the houses to plaintiff Brazil, of which action defendants were notified. Thereafter, over protest, the two houses were removed from the property by LeBeck, which removal prompted the present action and resulted in a judgment for plaintiff.

■ Following are the grounds on which Dupree and Stark based their motion for a new trial:

"(A) There was error in law prejudicial to these defendants in the courts [sic] of the trial, in the admission of and refusal to admit exhibits, and the giving and refusal to give instructions, all over the objection of and duly excepted to by these defendants.

"(B) The evidence is insufficient to justify the verdict."

LeBeck's motion for a new trial is predicated on the following grounds:

"(a) The evidence is insufficient to justify the verdict;

"(b) The verdict is against the law of the case; and

"(c) There was error in law occurring at the trial, in the admission of testimony, and in the giving of instructions all duly excepted to by defendant, E. W. LeBeck."

The trial court granted a new trial to the defendants on the grounds " * * * that manifest error was committed in instructions given the jury whereby the province of the jury was invaded * * *.", the claimed erroneous instruction being:

"Ladies and gentlemen of the jury, the Court instructs you further that in the event you find in favor of the plaintiff and against the defendants Dupree and Stark your verdict must also be against the defendant, LeBeck."

It will be observed that the grounds for the motions for a new trial were general and not specific and were not legal grounds for a new trial because they did not comply with § 5-804, OCLA, which, insofar as pertinent, follows:

"In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated, shall be considered or regarded by the court. * * *"

The word, "specify", is defined in Webster's New International Dictionary (2d ed) as: "To mention or name in a specific or explicit manner; to tell or state precisely or in detail; * * *."

In *Independent Highway Dist. No. 2 v. Ada County,* 24 Idaho 416, 134 P 542, 545, we find the following definition: "'Specify' is defined to mean: To mention specifically; to state in full and explicit terms; to point out, to particularize, or to designate by words one thing from another." See *Herrin v. Erickson,* 90 Mont 259, 2 P2d 296, 300; *A. M. Dillow & Co. v. City of Monticello,* 145 Iowa 424, 124 NW 186, 189.

In *Easton v. Quackenbush,* 86 Or 374, 168 P 631, we held that where the motion for a new trial was general and not specific the motion was too indefinite, and that the court was justified in refusing to grant a new trial.

In *Sullivan v. Wakefield,* 65 Or 528, 133 P. 641, we held that since the adoption of Article VII, § 3, of the constitution, insufficiency of the evidence is not a ground for a new trial, although a motion for a new trial based on the grounds that there was no evidence (meaning no substantial evidence) to support the verdict would be good grounds for the granting of a new trial.

■ Defendants argued that the trial court had the authority to grant a new trial on its own motion where prejudicial error occurs on the trial, citing *Clark v. Fazio et al.,* 191 Or 522, 230 P2d 553, and *Lyons v. Browning et al.,* 170 Or 350, 133 P2d 599. It appears from the record that the judgment in the present case was entered on December 5, 1950, and the order granting a new trial was entered on January 25, 1951, over 30 days having elapsed between their entry. Section 5-806, OCLA, provides as follows:

> "If a new trial is granted by the court on its own motion, the order shall so state and shall be made within 30 days after the filing of the judgment. Such order shall contain a statement setting forth fully the grounds upon which the order was made, which statement shall be a part of the record in the case. In event an appeal is taken from such an order, the order shall be affirmed only on grounds set forth in the order or because of reversible error affirmatively appearing in the record. [O. C. 1930, § 2-807; L. 1933, ch. 233, § 2, p. 339.]"

Since 30 days had elapsed from the date of the judgment up to the date of the order granting the new trial, the trial court had no authority to grant a new trial on its own motion.

■■ Notwithstanding the foregoing, we believe that the instruction given by the court, on which, because of asserted error, a new trial was granted, was a proper instruction. The oral agreement hereinbefore set out is established by substantial and uncontradicted evidence. The interest that Dupree and Stark had in such houses, under the circumstances, was not such that they could have given a valid bill of sale to LeBeck at the time in question. Their ownership in the houses was conditional, and, until the houses were removed

from the premises, no title vested in Dupree and Stark. The agreement between the parties was an agreement for services to be performed by Dupree and Stark in removing the houses, they to receive the buildings in question in payment for such services instead of money. In no event would LeBeck's rights rise to any higher dignity than the rights of Dupree and Stark. At the most, the transaction between Dupree and Stark and LeBeck was, in effect, an assignment of the original agreement between Dupree and Stark and the food company. *Columbia R. I. Co. v. Alameda L. Co.,* 87 Or 277, 288, 168 P 64, 440; *Corvallis & Alsea River R. Co. v. Portland E. & E. Ry. Co.,* 84 Or 524, 539, 163 P 1173; 4 Am Jur, Assignments, 311, § 104; 6 CJS, Assignments, 1142, § 84.

█ It is the law that a plaintiff may join in a replevin action all joint tort feasors who have had anything to do with the unlawful taking or withholding of personal property. *Gordan v. Briody et al.,* 170 Or 410, 134 P2d 431, 145 ALR 898.

█ The evidence discloses that Dupree and Stark gave a spurious bill of sale to LeBeck, and thereafter, when difficulty arose, they gave to LeBeck an indemnity agreement to indemnify him against damages that might accrue from the removal of the buildings, and that, after the buildings were removed, they went on to the premises and cleaned up the debris occasioned by the removal of the houses.

Under the evidence, the jury was justified in bringing in a verdict against Dupree and Stark, and, as LeBeck's interest in and to the houses was taken with all the burdens to which Dupree and Stark were subjected under their agreement with the food company,

the verdict against Dupree and Stark would necessarily justify the jury in bringing in a verdict against LeBeck since he was in possession of the buildings and refused to turn them over to plaintiff.

Reversed with instructions to reinstate the judgment in favor of plaintiff against the defendants.

### ON REHEARING

*Norman B. Kobin*, of Portland, argued the cause for Appellant. With him on the brief was David Weinstein, of Portland.

*Arthur H. Lewis*, of Portland, argued the cause and filed a brief for Respondent E. W. LeBeck.

Before LATOURETTE, C. J., and WARNER, ROSSMAN, LUSK, TOOZE and PERRY, Justices.

### LUSK, J.

In our former opinion we held that various grounds urged by defendant LeBeck (respondent here), in support of the order setting aside the verdict and granting a new trial, were not before us for consideration for the reason that the grounds assigned in the motion for a new trial were "not plainly specified" as required by § 5-804, OCLA. If the copy of the motion, as printed in the abstract of record, were the entire motion we would be bound to adhere to this conclusion. In a petition for rehearing, however, counsel for LeBeck called our attention to the fact that the motion filed, and which came to this court as part of the judgment roll, contains, under the somewhat unconventional caption "Points and Authorities", numerous grounds for allowance of the motion which

are plainly specified. We thereupon ordered a re-hearing.

■ Notwithstanding our ruling upon the sufficiency of the motion we did, in our former opinion, pass upon the correctness of the instruction given by the court, to the effect that if the jury found against the defendants Dupree and Stark they must also find against the defendant LeBeck. We have re-examined that question, and find no reason to change our opinion that the instruction was a correct statement of the law. We did not discuss one contention urged by counsel, namely, that the facts of the case called for application of the doctrine of *Richardson v. Bouthillier,* 193 Or 354, 238 P2d 212, and *Plumer v. Kingsley,* 190 Or 378, 226 P2d 297. These cases hold that when an owner voluntarily clothes a fraudulent or criminal purchaser with indicia of title and delivers to him possession of a chattel he will be estopped to assert his title as against one who, for value and in good faith and without notice, purchases the chattel in reliance upon the apparent ownership of the one so entrusted with possession and indicia of title. In this case the writing, Defendant LeBeck's Exhibit 4, claimed to be indicia of title (which will be later set out in the discussion of another question) was at most a contract with Columbia Food Company for services, under which Dupree and Stark, co-partners doing business as Spokane Wrecking Company, were to receive the houses and garages as compensation for their services in wrecking and removing them. They were not to become owners of the buildings until the services were performed, and no reasonably intelligent person would be justified in coming to any other conclusion from an inspection of the instrument. On the same day that Dupree received Exhibit 4 from

Columbia Food Company he delivered it to Defendant LeBeck, after endorsing on the back thereof the following:

"Sept 19-49

"Sold the 2 houses and garages to LeBeck & Son to be moved off premises in 30 days from date.

(Signed) "Robert Dupree, Owner."

The writing did not clothe Dupree and Stark with apparent ownership of the houses and garages as did the certificate of title to an automobile in *Plumer v. Kingsley,* supra, and the contract of conditional sale of an automobile in *Richardson v. Bouthillier,* supra. For this and other reasons the rules of those cases is without application here.

The grave question in the case arises upon the correctness of an instruction which the court gave relating to Exhibit 4. A claim of error in this instruction is specified in the motion for a new trial as one of its grounds. It is, therefor, our duty to consider it. The evidence shows that on September 19, 1949, prior to the execution of the writing, Triplett, representing Columbia Food Company, and Dupree orally agreed that Dupree and his partner should wreck and remove two houses and garages on land owned by Columbia Food Company. There was a dispute in the testimony as to whether or not a specific time was agreed on for completing the job. Triplett testified that Dupree agreed to complete it within seven days, or not later than September 25. Dupree swore that no time limit was mentioned; that he told Triplett "I would take the job down as soon as I possibly could for him." During or immediately after these oral negotiations

Triplett signed and delivered to Dupree Exhibit 4, which reads as follows:

"COLUMBIA FOOD COMPANY
General Office and Warehouse
211 S.E. Madison St.
Portland 14, Oregon

"Spokane Wrecking Co.

"Gentlemen—

"This will authorize you to wreck and remove the two houses and garages at 2025 and 2037 S. E. Insley, Block 5, Alton Park. We agree not to charge you for the houses and materials, nor are you to charge us for your services—

"Yours truly,
W. T. Triplett
President
Columbia Food Co."

The circumstances under which the writing was prepared and signed, as disclosed in the testimony of Triplett, were as follows:

"Q Did Mr. Dupree tell you that it would take at least 30 days to wreck them?

"A No; that is ridiculous. He knew he had to get them off within a week or he didn't have a deal. There was no question about it.

"Q Now after you had the discussion, then was there anything said by Mr. Dupree about getting some authority of some kind?

"A Yes; he said he would have to get a permit to wreck the houses.

"Q And when did that take place?

"A That took place in the outer office.

"Q And was that after all these other discussions that you had with him?

"A That is correct.

594

"Q And did he tell you why he needed that authority or permit?

"A Well, he said he couldn't touch the houses without a permit from the City to go ahead and wreck them.

"Q And he needed this authority to do what, to show to the City?

"A That is right, to get the permit.

"Q And then did he tell you what he needed or the type of authority he needed?

"A Yes. I said, 'Well, what do you want?' I says, 'We have given you authority to wreck it.' 'Well,' he said, 'I have to have something in writing.'

"Q So what did you do then?

"A I said, 'What do you want?'

"Q All right.

"A He says, 'Well, you get paper and I will dictate it.'

"Q And did he do that?

"A He did.

"Q I will show you Defendant's Exhibit 4 in evidence and ask you whether or not that is the letter that you gave him?

"A That is right."

Dupree substantially corroborated Triplett's account of the matter. He testified:

"Q Did you tell Mr. Triplett that you needed authority from him to get that wrecking permit?

"A Yes, sir, I did.

"Q You told him that?

"A They have to do that with everybody.

"Q This conversation you had with Mr. Triplett, as I understand, was in his office?

"A That is right. In other words, I ——

"Q Now after — I am sorry. Complete your answer, sir.

"A I dictated the letter and Mr. Triplett wrote it.

"Q You dictated the letter yourself?

"A That is right. He didn't know what to say so I told him.

"Q You told him what to say?

"A That is right."

In this state of the record the court instructed the jury as follows:

"I instruct you that the Court has ruled that the contract between Dupree and Stark and the Columbia Food Company acting through Mr. Triplett was an oral agreement entered into on September 19th between Dupree and Triplett. The letter which has been identified as Plaintiff's [sic] Exhibit No. 4, I instruct you, in the opinion of the Court is not a full and complete contract; does not set forth all the terms, and was merely a letter of authorization to obtain a permit to wreck the buildings, and you are not to treat it in itself as a full contract. It is your duty to determine and decide what was the contract in respect to the time element for the wrecking and removing of the buildings. Triplett, acting for and in behalf of the Columbia Food Company, claims the houses were to be off by Sunday night of that week. Dupree claims that he was to have a reasonable time in which to comply with the contract to wreck and remove and clean up the lots. You are, therefore, called upon to decide what was the agreement between the Columbia Food Company and Dupree at the time that the contract was entered into, which was September 19, 1949, and if you find from a preponderance of satisfactory evidence that the agreement and contract was that the buildings were to be wrecked and removed by the end of the week, then I instruct you that the Columbia Food Company had a right to sell the houses to the plaintiff; that the plaintiff was entitled to the immediate possession of the houses on October 5, 1949, the date on which he filed in his complaint, and your verdict must be for the plaintiff on that issue.

"If you should find from a preponderance of satisfactory evidence that the agreement and contract was that Dupree and Stark were to have a reasonable time in which to wreck and remove the two houses, then you are to determine what is a reasonable time. If you should find that the contract provided that Dupree and Stark were to have such reasonable time to wreck and remove the houses and the Columbia Food Company did not give them such reasonable time, then I instruct you that the plaintiff may not prevail, and the verdict must be for the defendants."

 The instruction was erroneous. On its face Exhibit 4 is "more than merely a letter of authorization to obtain a permit to wreck the buildings," for it contains contractual language. Elsewhere the instruction recognizes this fact by the statement that the writing "is not a full and complete contract." Here is a contradiction of what was first said. The fault, however, goes deeper than this. Since Exhibit 4 is silent as to the time of performance of the work the law implies an agreement to perform in a reasonable time, and, if the writing contained the entire agreement—if it was a total rather than a partial integration—that would be the limit of the obligation of Spokane Wrecking Company with respect to the time of performance. It is settled law "that if a contract is even partially reduced to writing, the written portion is no more subject to contradiction by parol than the entire contract would be had it been wholly reduced to writing" (3 Williston on Contracts (Rev ed) 1831, § 636); and it is generally held that, where no time for performance is fixed, evidence of a parol agreement that performance should be made at a particular time is inadmissible. Idem., 1839, § 640. But Professor Williston criticizes these holdings, and gives it as his opinion that,

when an implication "is one of law imposed upon the parties because of their failure to express an agreement upon the matter in question", evidence of an agreement contrary to the implication is admissible (idem., p. 1840); and the author cites decisions which have allowed proof of parol agreement fixing the time or place of performance, including *McDonald v. Supple,* 96 Or 486, 496, 190 P 315. A similar decision by this court is *Gordon v. Curtis Bros.,* 119 Or 55, 62, 248 P 158. Both cases approve the admission of evidence of such an oral agreement where no time of performance was mentioned in the writing. Section 240 (1) (b), Restatement of Contracts, states the rule thus:

> "An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and * * *
> "is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

Illustration 4 (p. 339) of this clause reads:

> "A and B in an integrated contract respectively promise to sell and to buy specified goods. No time or place for delivery is specified. If no agreement is made as to these matters the rule of law is that the goods are deliverable in a reasonable time at the seller's place of business. A contemporaneous oral agreement that the goods shall be delivered within thirty days, at the buyer's place of business, is operative."

In view of these authorities, we hold that it was proper to receive evidence in this case that the parties had orally agreed that the buildings should be wrecked

and removed within seven days from the date of the contract.

"The question whether the parties intended to express the whole of their agreement in the written contract, so far as it relates to the admission or rejection of parol evidence, is for the court, but the ultimate determination of the rights of the parties as depending on whether or not the entire agreement is contained in the writing is for the jury." 32 CJS 1030, Evidence, § 1013; 22 CJ 1291, Evidence, § 1721. See *Dorsey v. Tisby,* 192 Or 163, 175, 234 P2d 557; *Webster v. Harris,* 189 Or 671, 677, 222 P2d 644; *Sund & Co. v. Flagg & Standifer Co.,* 86 Or 289, 299, 168 P 300; *Gordon v. Curtis Bros.,* supra, p. 61. The case last cited involved a written contract for moving a building. There was a dispute, as in this case, as to whether there was an oral agreement fixing the time of performance. The court said: "The question whether an entire contract was reduced to writing, or an independent collateral agreement was made, is one of fact for the jury, if there is any evidence to sustain such oral agreement".

In *Roberts v. Bonaparte,* 73 Md 191, 20 A 918, 10 LRA 689, the court, after an extensive review of the authorities, approved as correct statements of the law, instructions, first, that it was for the jury to find from the evidence whether the contract was wholly in writing or partly in writing and partly in parol; and, second, if they found it of the latter character then they and not the court were to decide from all the evidence, written and oral, what the contract actually was. *Hines v. Willcox,* 96 Tenn 148, 33 SW 914, 54 Am St Rep 823, 34 LRA 824; and *Cobb v. Wallace,* 5 Cold. (Tenn) 539, 98 Am Dec 435, are to the same

effect. *Thomas v. Barnes,* 156 Mass 581, 31 NE 683, resembles this case in the particular that the writing involved was signed by only one of the parties and given to the other. Barnes, who signed the writing, claimed that it did not contain all the provisions of the contract and that as part of the contract Thomas, the other party, had given an oral warranty. The court, after calling attention to circumstances which weighed in favor of Barnes' contention, said:

> "If it [the writing] was delivered by Barnes to Thomas, and assented to by the latter as containing the whole contract, then oral evidence as to previous or contemporaneous conversations would not be admissible to affect it. But whether it was so delivered to Thomas, and assented to by him, was a question of fact for the jury under suitable instructions."

We think that the foregoing decisions announce the rule of law applicable to the present case. In the instruction now under examination the judge did not leave to the jury the determination of whether or not all the terms of the agreement were incorporated in the writing. On the contrary, he advised the jury that Exhibit 4 "is not a full and complete contract" and "you are not to treat it in itself as a full contract". But this was for the jury to say. They should have been instructed to determine from the evidence whether the writing expressed the entire contract of the parties, and, if they should find that it did, that the time for performance was that which the law implies, namely, a reasonable time; but that, if, on the other hand, they should find that the agreement was partly oral and partly in writing, then they should determine the question of the time agreed upon for performance from all the evidence, written and oral.

The instruction, therefore, was not only erroneous but it was prejudicial as well, and it was not merely the right but the duty of the court, when the error was called to its attention in the motion for a new trial, to allow the motion.

It follows that our former opinion in the particulars hereinabove indicated must be considered withdrawn. The order setting aside the verdict and granting a new trial is affirmed and the cause remanded for further proceedings conformable to this opinion.